662 F.2d 479
 Willis PARKER, Appellant,
v.
Robert F. PARRATT, Warden, Nebraska Penal and Correctional
Complex, Appellee.
Armstead PIERCE, Appellee,
v.
Robert F. PARRATT, Warden, Nebraska Penal and Correctional
Complex, Appellant.
 Nos. 81-1198, 81-1259.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 17, 1981.
Decided Oct. 28, 1981.
 
 Jarve L. Garrett, Omaha, Neb., for Parker.
 Paul L. Douglas, Atty. Gen., Harold Mosher, Asst. Atty. Gen., argued, Lincoln, Neb., for Parratt.
 Before LAY, Chief Judge, and BRIGHT and STEPHENSON, Circuit Judges.
 LAY, Chief Judge.
 
 
 1
 Willis Parker and Armstead Pierce are both Nebraska state prisoners as a result of convictions of kidnapping and forcible rape. In similar petitions for habeas corpus in the federal district court they urged that joint representation in state court by the same court-appointed attorney denied them effective assistance of counsel because of an actual conflict of interest between the two defendants. The federal district court, the Honorable Robert V. Denney presiding, found that an actual conflict existed and that Pierce was adversely affected, but that Parker was not. Parker appeals from the denial of his petition for a writ of habeas corpus; the State of Nebraska has appealed from the order granting habeas relief to Pierce. We find that the district court erred in granting relief to Pierce; we otherwise affirm the denial of the writ as to Parker.
 
 
 2
 I. Facts.
 
 
 3
 The state trial court record reveals that the prosecuting witness, who was 18 years of age, testified that on Sunday, June 1, 1975, a friend took her and her two-year-old nephew to a grocery store in Omaha, Nebraska. Upon discovering the store closed, the prosecutrix and her nephew began walking home across the grocery store parking lot. Two men in an automobile drove into the parking lot and stopped beside them. Pierce, the driver, engaged the prosecutrix in conversation while Parker, the passenger, emerged from the car to place the nephew in the car's back seat. Parker then told the prosecutrix that she had to go with them because they had her nephew. The prosecutrix entered the front seat, and Parker entered the back seat of the car. After driving around and stopping at a liquor store for wine, Pierce drove to a house rented by his brother. After Parker and Pierce drank some wine and smoked some marijuana cigarettes, Pierce asked the prosecutrix to dance, and she acquiesced for a while. When the prosecutrix tried to leave the house, one of the men grabbed her, threw her in a chair, and threw the nephew on a couch. A struggle ensued in which the prosecutrix scratched the two men and bit Parker when he tried to kiss her. Pierce took her into a bedroom, pushed her onto a bed, and ordered her to disrobe. Parker threatened to throw her nephew down some stairs if she did not cooperate. First Pierce, then Parker, had sexual intercourse with her. They then released her in an area which turned out to be near a friend's house. From there the prosecutrix called a teacher to whom she related the incident. The teacher drove her home, whereupon her mother called the police. Subsequent to a police interview the prosecutrix was taken to a hospital for an examination which revealed sperm in her vagina.
 
 
 4
 Pierce was arrested first. He stated to the police that he had been alone with the prosecutrix, that no one else was present, but minutes later he admitted Parker's presence. Parker was arrested afterwards, at which time he stated that the prosecutrix had scratched him and that she had acted like she wanted to have sexual intercourse with Pierce but not with him. A court-appointed attorney from the public defender's office represented both Parker and Pierce at a joint arraignment, and later at the state trial. The two cases were consolidated for trial. Parker and Pierce testified at their post-conviction hearing that the public defender never apprised them of the potential conflicts and problems with joint counsel and never advised them of the right to separate trials. They further testified that neither the pretrial judge nor the trial judge addressed them regarding the right to separate counsel or the right to separate trials. At the evidentiary hearing in federal court, the pretrial judge testified that his only inquiry of the defendants was regarding whether defendants "were satisfied" with the lawyer that had been appointed at the time of arraignment. However, he inquired of defendants' counsel as to whether there was any problem with his joint representation, and counsel replied that there was none. The state judge stated that, upon his review of the file, he could perceive none.
 
 
 5
 At the consolidated trial both Parker and Pierce asserted the defense of consent. The jury found them both guilty of kidnapping and forcible rape, and the court sentenced them to concurrent terms of 25 years for each count.
 
 
 6
 Both appealed to the Nebraska Supreme Court[1] on the grounds that the trial court had committed reversible error in overruling defense motions for a directed verdict because the evidence was insufficient as a matter of law to show resistance of the prosecutrix amounting to nonconsent, and that the trial court erred in allowing simultaneous representation of conflicting interests by a single attorney. Both convictions were affirmed. State v. Pierce, 196 Neb. 762, 766, 246 N.W.2d 210, 212 (1976).
 
 
 7
 Parker and Pierce then filed petitions for writs of habeas corpus to the United States District Court for the District of Nebraska, claiming denial of sixth amendment rights by joint representation of conflicting interests by a single attorney.[2] Following the guidelines set forth in Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), the federal district court conducted two evidentiary hearings and found an actual conflict of interest present on the record. The district court further found that this conflict adversely affected Pierce because he had a more credible claim to the defense of consent, and, thus, granted him relief. However, the district court found no adverse effect with regard to Parker and, therefore, denied him relief. Parker v. Parratt, 504 F.Supp. 690, 700 (D.Neb.1981).
 
 
 8
 II. Exhaustion of State Remedies.
 
 
 9
 Initially, the State asserts that Pierce and Parker failed to exhaust their state remedies as required by 28 U.S.C. § 2254(b) as a condition precedent to federal habeas relief. We do not agree.
 
 
 10
 Both the petitioners presented the sixth amendment issue of representation of conflicting interests by a single attorney on direct appeal from their convictions to the Nebraska Supreme Court. The fact that the Nebraska Supreme Court failed to dispose of the precise issues now raised is not necessarily controlling. It is well settled that the state court need not rule on the merits of an issue before the federal habeas court does. It is enough that the state court was on notice of the question and was presented the opportunity to rule on the same question raised in the federal habeas petition. Eaton v. Wyrick, 528 F.2d 477, 480 (8th Cir. 1975); Rice v. Wolff, 513 F.2d 1280, 1290-91 (8th Cir. 1975), rev'd on other grounds sub nom. Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); see Wilwording v. Swenson, 404 U.S. 249, 250, 92 S.Ct. 407, 408, 30 L.Ed.2d 418 (1971); Losieau v. Sigler, 421 F.2d 825, 828 (8th Cir. 1970). We find that there was sufficient identity of issues before the Nebraska Supreme Court on direct appeal and the federal habeas court to fulfill the exhaustion requirement.
 
 
 11
 The State also contends that the federal district court was precluded by 28 U.S.C. § 2254(d) from conducting an evidentiary hearing. This court, of course, recognizes that the Supreme Court, in its recent decision of Sumner v. Mata, 449 U.S. 764, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), reaffirmed the presumption of correctness which a federal habeas court must afford state factual determinations, as mandated by 28 U.S.C. § 2254(d). See In re John Parker, 423 F.2d 1021, 1024 (8th Cir.), cert. denied sub nom. Parker v. South Dakota, 398 U.S. 966, 90 S.Ct. 2182, 26 L.Ed.2d 551 (1970). The burden is upon the petitioner to show by clear and convincing evidence that the factual determination by the state court is erroneous, and the federal habeas court must include in its opinion the reasoning which led it to conclude that either one of the first seven factors in 28 U.S.C. § 2254(d) was present or the state finding was not fairly supported by the record. Sumner v. Mata, supra, 101 S.Ct. at 771.
 
 
 12
 We are convinced, however, that 28 U.S.C. § 2254(d) and Sumner v. Mata, supra, are inapplicable to the instant case. In Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), the Supreme Court characterized questions of conflict of interest in multiple representation as mixed questions of law and fact requiring "application of legal principles to the historical facts of (the) case." 446 U.S. at 342, 100 S.Ct. at 1715. A state court's holding regarding this hybrid factual and legal question of conflict of interest in multiple representation is "open to review on collateral attack in a federal court." Id. Therefore, the limitations upon factual findings set forth in 28 U.S.C. § 2254(d) are inapplicable to federal habeas proceedings based upon multiple representation of conflicting interests.
 
 
 13
 III. The Sixth Amendment.
 
 
 14
 The constitutional right to assistance of counsel for defense in all criminal prosecutions means the right to adequate or effective assistance of counsel. Cuyler v. Sullivan, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980). It is now settled that "(W)here a constitutional right to counsel exists, (our) Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest." Wood v. Georgia, 450 U.S. 261, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220 (1981); see Cuyler v. Sullivan, 446 U.S. 335, 348-50, 100 S.Ct. 1708, 1718-1719, 64 L.Ed.2d 333 (1980); Holloway v. Arkansas, 435 U.S. 475, 484-85, 98 S.Ct. 1173, 1178-1179, 55 L.Ed.2d 426 (1978); Glasser v. United States, 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942). It must also be acknowledged, however, that joint representation of multiple defendants with conflicting interests by a single attorney is not per se violative of constitutional guarantees of effective assistance of counsel." Holloway v. Arkansas, 435 U.S. 475, 482, 98 S.Ct. 1173, 1177, 55 L.Ed.2d 426 (1978).
 
 
 15
 In Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), the Supreme Court stated:
 
 
 16
 Holloway requires state trial courts to investigate timely objections to multiple representation. But nothing in our precedents suggests that the Sixth Amendment requires state courts themselves to initiate inquiries into the propriety of multiple representation in every case. Defense counsel have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises during the course of trial. Absent special circumstances, therefore, trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist.... Unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry.
 
 
 17
 446 U.S. at 346-47, 100 S.Ct. at 1717 (footnotes omitted).
 
 
 18
 See also Wood v. Georgia, supra, 101 S.Ct. at 1104.
 
 
 19
 In Cuyler v. Sullivan, supra, the Court reaffirmed its earlier holding in Glasser v. United States, 315 U.S. 60, 92, 62 S.Ct. 457, 475, 86 L.Ed. 680 (1942), that:
 
 
 20
 (A) defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief. See Holloway, supra, (435 U.S.) at 487-491 (98 S.Ct. at 1180-1182). But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance. See Glasser, supra (315 U.S.) at 72-75 (62 S.Ct. at 465-467).
 
 
 21
 446 U.S. at 349-50, 100 S.Ct. at 1719 (footnote omitted).
 
 
 22
 The Court concluded by reiterating the controlling standard:
 
 
 23
 We hold that the possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance.
 
 
 24
 446 U.S. at 350, 100 S.Ct. at 1719 (emphasis added).
 
 
 25
 Therefore, a two-step test must be met in a case of multiple representation of conflicting interests. A claimant must establish: (1) actual conflict of interest; and (2) adverse effect on the lawyer's representation.
 
 
 26
 A. Actual Conflict.
 
 
 27
 Although the federal district court found the presence of an actual conflict, it additionally found that no "special circumstances" existed on the record that should have alerted the state trial court to make further inquiry under Cuyler v. Sullivan. The federal district court based its finding of an actual conflict on three factors: (1) an inconsistent pretrial statement made by Pierce, found on the police record, that Parker was not present or involved in the criminal incident; (2) a pretrial statement made by Parker to the police that he had thought that the prosecutrix wanted to have sex with Pierce, but not with him; and (3) the fact that the police record indicated a scratch was found on Parker upon arrest but contained no such indications as to Pierce. The district court stated that these inconsistencies were not "glaring" to the point of putting the state court on notice, but that they indicated such unequally credible claims to the defense of consent as to indicate an actual conflict of interest. We must respectfully disagree.
 
 
 28
 Although there is no litmus test to determine whether an actual conflict exists, present case law provides a useful basis for analysis. Where there are markedly different degrees of relative culpability between defendants, a likelihood of conflict of interest may exist. See Camera v. Fogg, 658 F.2d 80 at 88-89 (2d Cir. 1981); see also Willis v. United States, 614 F.2d 1200, 1206 (9th Cir. 1979). Where an attorney obtains confidential information helpful to one defendant but harmful to another, a conflict of interest may exist. See United States v. Burroughs, 650 F.2d 595, 598 and n.4 (5th Cir. 1981). A conflict of interest exists where the factual circumstances require counsel to offer evidence which assists one codefendant but adversely affects others. See Ross v. Heyne, 638 F.2d 979, 983-84 (7th Cir. 1980); United States v. Kranzthor, 614 F.2d 981, 983 (5th Cir. 1980); United States v. Mavrick, 601 F.2d 921, 930-31 (7th Cir. 1979). A conflict of interest can arise where different defenses are offered. Clearly, a conflict would arise where one defendant attempts to exonerate himself by pointing the finger of guilt at codefendants.
 
 
 29
 With these guidelines in mind, we move to the analysis surrounding the alleged conflict between Parker and Pierce. In doing so it is fundamental that defense counsel cannot be blamed for offering the defense of consent for both defendants. This was their testimony. It was not a matter of trial strategy deemed expedient by counsel. He was merely asserting the defense sworn to by both defendants. In an analysis of whether a conflict of interest existed, it is important to assess the factual circumstances surrounding the alleged conflict in light of the tendered defense of both defendants. It is fundamental to this assessment that neither defendant attempted to blame the other in an attempt to exonerate himself. The defense was that the prosecutrix gave her consent to both defendants. Both defendants testified that she consented to have sexual intercourse with each of them. The jury found this defense not to be credible.
 
 
 30
 Parker.
 
 
 31
 The claim now is that defendants' counsel was ineffective because he did not object to the joint trial and to the joint defense. This contention is nothing more than hindsight rationalization;[3] such a decision may have been a tactical effort to launch a common defense to strengthen against a common attack. See Glasser v. United States, 315 U.S. 60, 92, 62 S.Ct. 457, 475, 86 L.Ed. 680 (1942) (Frankfurter, J. dissenting).
 
 
 32
 The district court found that Pierce had the more credible claim to the defense of consent, and that "the impact of the public defender's representation of conflicting interests was, as to Parker, de minimus, and therefore does not provide a basis for relief." We find that neither Parker nor Pierce have demonstrated an actual conflict.
 
 
 33
 Pierce's early statement that Parker was not present may have affected Pierce's, not Parker's, credibility somewhat, but it fails to point up any conflict between Parker and Pierce. Parker's defense was consent, not alibi; therefore, an attorney representing Parker would have no reason to suppress Pierce's statement. This precise claim was directly answered by the Nebraska Supreme Court when it observed:
 
 
 34
 The claim of a conflict in interest is based, primarily, upon a pretrial statement by Pierce to the police in which Pierce stated that no one was with him when he was with the prosecuting witness. Pierce admitted on direct examination that the statement was untrue and said that he had made the statement in an effort to protect Parker, his cousin, who was married.
 
 
 35
 The statement was not prejudicial to Parker because he admitted that he had sexual intercourse with the prosecuting witness. The issue was consent, not whether Parker had participated in the offense. There was no conflict of interest which prevented Parker from having a fair trial.
 
 
 36
 State v. Pierce, supra, 196 Neb. at 766, 246 N.W.2d at 212.
 
 
 37
 Parker's statement to the police regarding the prosecutrix's desire to have sex with Pierce but not with him may or may not have been treated differently by an attorney representing Parker's sole interest. However, the statement was brought out on cross-examination, not on direct; it is difficult to determine what, if anything, Parker's attorney could have done to prevent admission of the statement into evidence. In addition, although the statement might be considered to be helpful to Pierce's defense, it is not necessarily harmful to Parker. Both Pierce and Parker testified that the prosecutrix first desired sex with Pierce, but, being unsatisfied, decided later on to try sex with Parker. Under the circumstances, we see no conflict of interest by the appearance of this statement in the police records.
 
 
 38
 Finally, the police records indicating scratches on Parker are admittedly incriminating physical evidence, but that does not explain how Parker's attorney could have prevented introduction of these facts into evidence at trial by representing Parker's sole interest.
 
 
 39
 The record discloses no affirmative actions on the part of the public defender indicating a conflict of interest as to Parker. We are aware that when a conflict of interest appears, it often produces prejudicial restraint, rather than an easily identifiable affirmative act adversely affecting a client. It is the "near impossible" task to determine whether the public defender would have, for example, more fully examined either Parker or Pierce on the witness stand had the fear of helping one at the expense of incriminating the other not been present. However, before one speculates as to this question, the predicate finding of an actual conflict is necessary. We fail to find any actual conflict of interest as to Parker in his representation by Pierce's attorney.
 
 
 40
 Pierce.
 
 
 41
 The district court found an actual conflict and sufficient adverse effect as to Pierce to warrant granting habeas relief. We must respectfully disagree.
 
 
 42
 As previously discussed, it is difficult to determine how Pierce's "alibi statement" regarding Parker was germane to his defense of consent, or how it could have been excluded. Although it might be argued that it affected his credibility, he explained why he made the statement initially to the police. It is difficult to understand how it made an actual conflict in the case or how it could have possibly affected Pierce's representation by Parker's lawyer.
 
 
 43
 The statement by Parker regarding the prosecutrix's desire to have sex with Pierce, as previously discussed, was brought out on cross-examination of Parker. How Pierce's attorney could have avoided it is not apparent; furthermore, this was a helpful, not damaging, statement with regard to Pierce. In any multiple defendant case all of the facts seldom involve all of the defendants. Here Parker's statement was not harmful to Pierce, nor could it provide any possible detriment to Pierce's effective representation conducted by Parker's counsel.
 
 
 44
 The district court perceived that the most potentially damaging aspect of the trial was the evidence of injury to Parker, but not to Pierce. The district court found this as actual conflict of interest, an indication that Pierce had a stronger case or more credible claim to the defense of consent than did Parker.
 
 
 45
 It is urged here that this was detrimental to Pierce since his case was consolidated with the weaker case of Parker. It is urged the defendants' counsel sought to consolidate the two cases so as to provide Parker's weaker case strength through joinder with Pierce's stronger case. This again we deem to be pure speculation.
 
 
 46
 Both Parker and Pierce testified that the prosecutrix consented. Nothing in the record demonstrates that at any time their defenses would conflict. Both related basically the same story. Parker did not accuse Pierce in an attempt to exonerate himself. Nor did Pierce accuse Parker. Both acted in concert in abducting the prosecutrix and detaining her in the home. Their counsel knew their defenses. He obviously concluded that there was no inconsistency in the defense, and that he knew of no conflict. As the Supreme Court stated in Cuyler v. Sullivan: "An 'attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of trial.' " 446 U.S. at 347, 100 S.Ct. at 1717, quoting Holloway v. Arkansas, supra, 435 U.S. at 485, 98 S.Ct. at 1179.
 
 
 47
 Under these circumstances, we find that no actual conflict of interest existed as to either Parker's or Pierce's defense, thus precluding federal habeas relief. The order granting a writ of habeas corpus to Pierce is reversed and the district court is directed to enter an order dismissing Pierce's petition; the order denying Parker a writ of habeas corpus is affirmed.
 
 
 
 [1]
 Both Parker and Pierce were represented by the same privately retained counsel on direct appeal to the state supreme court
 
 
 [2]
 Both Parker and Pierce were represented by the same privately retained attorney in the habeas proceedings; both defendants agreed to the joint representation on this appeal, as well as in the habeas proceeding
 
 
 [3]
 As this court wrote in Robinson v. United States, 448 F.2d 1255 (8th Cir. 1971):
 Hindsight can always be utilized by those not in the fray so as to cast doubt on trial tactics a lawyer has used. Trial counsel's strategy will vary even among the most skilled lawyers. When that judgment exercised turns out to be wrong or even poorly advised, this fact alone cannot support a belated claim of ineffective counsel.... In order to assert a Sixth Amendment infirmity on this ground, the circumstances must demonstrate that which amounts to a lawyer's deliberate abdication of this ethical duty to his client. There must be such conscious conduct as to render pretextual an attorney's legal obligation to fairly represent the defendant.
 448 F.2d at 1256 (footnote and citations omitted).