609 A.2d 728

Leroy AUSTIN

v.

STATE of Maryland.

No. 155, Sept. Term, 1989.

Court of Appeals of Maryland.

July 27, 1992.

Victoria S. Keating, Asst. Public Defender (Alan H. Murrell, Public Defender, both on brief), Baltimore, for petitioner.

Richard B. Rosenblatt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, JJ., and MARVIN H. SMITH, Associate Judge of the Court of Appeals (retired), Specially Assigned.

ELDRIDGE, Judge.

We granted a petition for a writ of certiorari in this criminal case to review the petitioner's contention that his trial counsel labored under an actual conflict of interest which requires a reversal of the convictions. The asserted conflict of interest arose when law partners continued to represent codefendants in a criminal trial after one of the codefendants elected to testify against the other.

### I.

The pertinent facts are as follows. The petitioner, Leroy Jerry Austin, was one of seven initial codefendants, all charged with particular violations of the laws regulating controlled dangerous substances. Mr. Austin was represented by John Denholm. Christine Wise, a codefendant, was represented by Mr. Denholm's law partner, James Salkin. All seven codefendants were scheduled for trial in the Circuit Court for Baltimore City, but were instructed to report to Judge Edward Angeletti, the designated administrative judge in charge of the criminal division, for a postponement.

When the defendants and their counsel were before Judge Angeletti, the prosecutor, Steven May, indicated that several of the defendants might be willing to plead guilty and to assist in the prosecution of the other defendants.

Mr. May indicated that the codefendants would only testify if they could be assured of their safety. In response Judge Angeletti cleared the courtroom of all defendants, their counsel, visitors, and family members, so that he could explore the possibility of a plea arrangement with each defendant and his or her attorney, without the presence of other defendants, attorneys, etc.

During the ensuing proceedings the prosecuting attorney proffered that "Ms. Wise ... is aware of and can relate the defendant Tony Leroy Austin with the drug dealing conspiracy which her husband, primarily Henry Newkirk and the other individual Tony Austin and Newkirk, were involved. We believe that she does have detailed knowledge of drug dealings involving those individuals and can provide testimony to the State linking all of these individuals, particularly Tony Austin, with the drug dealing conspiracy." Ms. Wise agreed to plead guilty in exchange for a six year suspended sentence, with a five year probation period, on the condition that she cooperate with and testify for the prosecution. At this point, stating that "a conflict situation, very clearly," existed if Ms. Wise testified against Mr. Austin and both were represented by partners in the same law firm, Judge Angeletti ordered Mr. Salkin not to discuss the case in any way with Mr. Denholm, not even to disclose that Ms. Wise would be testifying against Mr. Austin. Mr. Salkin requested that Judge Angeletti permit him to tell Mr. Denholm that Ms. Wise would be testifying against Mr. Austin. Judge Angeletti refused, and instructed Mr. Salkin to "say nothing to Mr. Denholm about what is going on in this case."

The petitioner Austin and the State failed to reach a plea bargain agreement. Consequently, Judge Angeletti ordered that Mr. Austin be tried in a joint trial with Marshall Queen, another codefendant who did not plead guilty, with the trial to begin the next day before Judge Martin Greenfeld.

The next day, before Judge Greenfeld, Mr. Denholm and Brian Murphy, Mr. Queen's counsel, objected to the proce-

dure utilized by Judge Angeletti the day before. They also moved for a continuance, stating that they desired to obtain and review additional materials consisting of a transcript of the proceedings before Judge Angeletti, a new list of witnesses whom the State would be calling, the various plea arrangements, and any statements made by codefendants testifying in response to the plea arrangements. Mr. Murphy also made a motion to sever the proceedings.

Judge Greenfeld granted the motion to sever, and the State elected to proceed against Mr. Queen first. Judge Greenfeld, therefore, sent Mr. Austin and Mr. Denholm back to Judge Angeletti for a trial assignment. Later that day Mr. Queen agreed to plead guilty. Thereafter, Judge Angeletti rescheduled Mr. Austin's trial for July 18, 1988, before Judge Greenfeld.

On July 18, 1988, in front of Judge Greenfeld, Mr. Denholm complained that the requested transcripts had still not been supplied to him, and he objected to the gag order which Judge Angeletti had placed upon his partner, Mr. Salkin. These objections were made in a "Motion to Rescind the Gag Order and Other Appropriate Relief." The status of the motion was left unresolved that day.

On July 19, 1988, the prosecutor, Mr. May, responded orally in court to Mr. Denholm's motion. He stated that the gag order was required because Mr. Salkin and Mr. Denholm were partners and Judge Angeletti believed that there was a conflict of interest. The prosecuting attorney also informed Judge Greenfeld that no hearing was ever held on the issue of the conflict of interest. Mr. May concluded that, "[t]herefore, I think there is no question about that if Mr. Salkin continues to represent Ms. [Wise] there is definitely a conflict here."

Mr. Denholm speculated that Judge Angeletti had not found a conflict, as Judge Angeletti would not have allowed Mr. Salkin to continue to represent Ms. Wise during the plea negotiations if he had believed that a conflict existed. Mr. Denholm asserted that Judge Angeletti's allowing Mr.

Salkin to represent Ms. Wise during the negotiations was inconsistent with the existence of a conflict, and that, therefore, there was no need for the gag order.

Judge Greenfeld referred the parties to Judge Angeletti in order to allow Judge Angeletti to rule on the motion and to review the gag order. Judge Angeletti refused to rule on the motion before the State had responded in writing. The judge did, however, address the issue of the gag order, telling Mr. Denholm that only Mr. Salkin was under the order and that Mr. Denholm was free to talk to anyone in the case other than Mr. Salkin. Mr. Denholm argued that if Mr. Salkin were not his partner he would be able to talk to him, as Mr. Salkin's client was to testify against his client. Judge Angeletti refused to lift his gag order and ultimately scheduled Mr. Austin's trial to begin August 10, 1988.

Mr. Austin's trial took place on August 10, 1988, before a jury and Judge Elsbeth Bothe. At the trial, Ms. Wise was called as a witness for the prosecution, and she made several statements which incriminated Mr. Austin. She testified that Mr. Austin and Henry Newkirk, who was Wise's husband, ran a drug operation at the premises where Wise and Newkirk lived, that large quantities of illegal drugs were delivered to and distributed from those premises on an ongoing basis, that Mr. Austin arrived daily to collect the money, and that Mr. Austin was the "supplier" with all of the others working for him. The petitioner Austin was convicted of conspiracy to distribute heroin and distribution of heroin.

At Mr. Austin's sentencing hearing, Mr. Denholm, referring to the period before Ms. Wise had agreed to plead guilty, stated that he had discussed the events with her at least a half a dozen times. During those conversations she was initially represented by only Mr. Denholm and then later by both partners because the defenses of the two defendants were then consistent. Mr. Denholm stated that Ms. Wise had told him that she had never seen Mr. Austin with either drugs or money.

Mr. Austin was sentenced to twelve years on each conviction, the sentences to run consecutively, and the Court of Special Appeals affirmed in an unreported opinion. This Court then granted Mr. Austin's petition for a writ of certiorari which presented the question of whether defense counsel labored under such a conflict of interest that the defendant's constitutional right to the assistance of counsel was violated.

## II.

### A.

The constitutional right to counsel, under the Sixth Amendment and Article 21 of the Maryland Declaration of Rights, includes the right to have counsel's representation free from conflicts of interest. *Wood v. Georgia*, 450 U.S. 261, 271, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220, 230 (1981). *See Pressley v. State*, 220 Md. 558, 155 A.2d 494 (1959). To establish a violation of the constitutional right, a defendant "must establish that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333, 348 (1980). To the same effect, *see Pressley v. State, supra*, 220 Md. at 562, 155 A.2d at 496.

The Supreme Court has pointed out, however, that it "is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests" and that "it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of interest." *Strickland v. Washington*, 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674, 696 (1984).[1] There-

---

**1.** The cited portion of the Supreme Court's *Strickland* opinion dealt with the role of prejudice in connection with different types of violations of the Sixth Amendment's Assistance of Counsel Clause. The Court thus stated (466 U.S. at 692, 104 S.Ct. at 2067, 80 L.Ed.2d at 696):

"In certain Sixth Amendment contexts, prejudice is presumed. Actual or constructive denial of the assistance of counsel altogether

fore, a court, having found the existence of an actual conflict of interest, should refuse " 'to indulge in nice calculations as to the amount of prejudice' attributable to that conflict." *Cuyler v. Sullivan, supra,* 446 U.S. at 349, 100 S.Ct. at 1719, 64 L.Ed.2d at 347, quoting *Glasser v. United States,* 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680, 702 (1942).

## B.

■ Among the criminal cases where it has been asserted that a potential or actual conflict of interest existed, probably a majority involve the situation where two or more codefendants are represented by one attorney. The present case, however, involves two codefendants represented by different attorneys who are law partners. The State, without citing any supporting authority, seems to suggest that a different analysis for determining the presence of an actual conflict of interest should be applied where law partners,

---

is legally presumed to result in prejudice. So are various kinds of state interference with counsel's assistance....

"One type of actual ineffectiveness claim warrants a similar, though more limited, presumption of prejudice. In *Cuyler v. Sullivan,* 446 U.S., at 345–350, 100 S.Ct. at 1716–1719, the Court held that prejudice is presumed when counsel is burdened by an actual conflict of interest. In those circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. Given the obligation of counsel to avoid conflicts of interest and the ability of trial courts to make early inquiry in certain situations likely to give rise to conflicts, see, *e.g.,* Fed.Rule Crim.Proc. 44(c), it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of interest. Even so, the rule is not quite the *per se* rule of prejudice that exits for the Sixth Amendment claims mentioned above. Prejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.' *Cuyler v. Sullivan, supra,* 446 U.S., at 350, 348, 100 S.Ct. at 1719, 1718 (footnote omitted).

"Conflict of interest claims aside, actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice."

instead of a single attorney, represent codefendants.[2] We have found no support for the State's suggestion. In our view, at least under circumstances such as those presented in this case, the presence or absence of an actual conflict of interest should be resolved by the same principles, regardless of whether the codefendants are represented by the same attorney or by law partners.

The cases which have considered the issue have generally concluded that representation of codefendants by partners or associates in a private law firm should be treated the same, for purposes of conflict of interest analysis, as representation of codefendants by one attorney. In a case where a prosecution witness was represented by one member of a law firm and the defendant by another member of the same firm, an Illinois court stated (*People v. Dace,* 153 Ill.App.3d 891, 896, 106 Ill.Dec. 625, 628, 506 N.E.2d 332, 335, *app. denied,* 116 Ill.2d 565, 113 Ill.Dec. 307, 515 N.E.2d 116 (1987)):

> "It is well settled that the knowledge of one member of a law firm is imputed to other members of the firm.... A conflict of interest for one member of a firm extends to all members of a firm.... In a case where two members of a firm represent clients with conflicting interests, it can only be concluded that you have a situation where the same attorney is representing both clients. In the instant case attorney Markese's relationship as counsel for [prosecution witness] Moffett and his knowledge of his client's

---

**2.** The State acknowledges, however, that in *Burger v. Kemp,* 483 U.S. 776, 783, 107 S.Ct. 3114, 3120, 97 L.Ed.2d 638, 650 (1987), the Supreme Court "assumed, without deciding, that law partners were tantamount to a single attorney for purposes of joint representation analysis." (State's brief, p. 5 n. 1), The Supreme Court in *Burger* also stated as follows (483 U.S. at 783, 107 S.Ct. at 3120, 97 L.Ed.2d at 650):

> "There is certainly much substance to petitioner's argument that the appointment of two partners to represent coindictees in their respective trials creates a possible conflict of interest that could prejudice either or both clients. Moreover, the risk of prejudice is increased when the two lawyers cooperate with one another in the planning and conduct of trial strategy."

case must be imputed to attorney Kielian, who represented the defendant."

*See also, e.g., Ross v. Heyne,* 638 F.2d 979, 983 (7th Cir. 1980) (stating that the situation in which one attorney represented the defendant, while his law partner represented codefendants who testified for the prosecution, was sufficiently similar "to the typical multiple representation case to warrant application of the same principles and analysis"); *People v. Grigsby,* 47 Ill.App.3d 812, 820, 8 Ill.Dec. 243, 248, 365 N.E.2d 481, 486 (1977) ("the disqualification of one partner from a case disqualifies his copartners"); *The People v. Stoval,* 40 Ill.2d 109, 112–113, 239 N.E.2d 441, 443–444 (1968); *State v. Lem'Mons,* 238 Kan 1, 8–10, 705 P.2d 552, 556–557 (1985) (a conflict of interest existed where the husband, in a husband and wife law firm, represented one codefendant while the wife represented the other, and the codefendants attempted to implicate each other); *Commonwealth v. Hodge,* 386 Mass. 165, 169, 434 N.E.2d 1246, 1248 (1982) (holding that it was immaterial for conflict of interest purposes whether one attorney or two attorneys in the same firm represented the witness and the defendant); *Commonwealth v. Geraway,* 364 Mass. 168, 174–176, 301 N.E.2d 814, 817–818 (1973) (representation of the defendant and an adverse witness by different lawyers in same law firm was held to be a conflict of interest); *State v. Bellucci,* 81 N.J. 531, 541–542, 410 A.2d 666, 671 (1980) (conflict of interest rules as applied to a law firm should be viewed as if the firm were really one lawyer); *People v. Mattison,* 67 N.Y.2d 462, 469–470, 503 N.Y.S.2d 709, 713, 494 N.E.2d 1374, 1378, *cert. denied,* 479 U.S. 984, 107 S.Ct. 571, 93 L.Ed.2d 575 (1986) (holding that the defendant was denied his right to the effective assistance of counsel when a codefendant's plea bargain, including a promise to testify against the defendant, was negotiated by the law partner of the defendant's counsel).[3]

---

3. With regard to public defender offices, there appears to be some disagreement among the cases as to whether, and to what extent, a

The same principle is reflected in 1 *American Bar Association Standards for Criminal Justice* (2nd ed. 1980, 1986 Cum.Supp.). Under The Defense Function, § 4–3.5(b) Conflict of Interest, it is stated (emphasis added):

> "a lawyer *or lawyers who are associated in practice* should not undertake to defend more than one defendant in the same criminal case.... The potential for conflict of interest in representing multiple defendants is so grave that ordinarily a lawyer should decline to act for more than one of several codefendants...."

Thus, the potential for a conflict of interest is present whenever codefendants are represented by the same lawyer or by lawyers who are associated in practice. *See also* Rule 1.10(a) of the Maryland Lawyers Rules of Professional Conduct which states: "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so...."

There are additional reasons to treat, for purposes of conflict of interest analysis, the representation of codefendants by law partners as the same as the representation of codefendants by one attorney. Several of these reasons were set forth by the Supreme Court of New Jersey in *State v. Bellucci, supra,* 81 N.J. at 541–542, 410 A.2d at 671, as follows:

> "There is ready access to confidential information among members of a law firm. The close association of members heightens the risk of even inadvertent disclosure. Each partner's professional knowledge is justifi-

---

public defender's office is to be viewed like a single private law firm for purposes of applying conflict of interest principles. *See generally, e.g., People v. Nelson,* 82 Ill.2d 67, 74–75, 44 Ill.Dec. 292, 296, 411 N.E.2d 261, 265 (1980); *People v. Robinson,* 79 Ill.2d 147, 155–160, 37 Ill.Dec. 267, 261–263, 402 N.E.2d 157, 161–163 (1979); *State v. Bell,* 90 N.J. 163, 167–171, 447 A.2d 525, 527–529 (1982); *Com. v. Westbrook,* 484 Pa. 534, 539–540, 400 A.2d 160, 162–163 (1979); *Commonwealth v. Via,* 455 Pa. 373, 316 A.2d 895 (1974); *Com. v. Green,* 379 Pa.Super. 602, 550 A.2d 1011 (1988). We have no occasion in the instant case to explore this matter.

ably imputed to the entire firm, regardless of actual disclosure.[4] *See, e.g., Westinghouse Elec. Corp. v. Kerr–McGee Corp.,* 580 F.2d 1311, 1321 (7th Cir.1978), *cert. den.,* 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1979). The shared economic interest of the entire firm in the clients of individual members also supports treating a partnership as one attorney. A financial stake in the outcome of a case is itself a source of conflict. *See generally NAACP v. Button,* 371 U.S. 415, 443, 83 S.Ct. 328 [342], 9 L.Ed.2d 405 (1963). Perhaps most importantly, public confidence in the integrity of the Bar would be eroded if conduct proscribed for one lawyer could be performed by his partner. *See* Note, 'Professional Responsibility—Conflicts of Interest Between Legal Aid Lawyers,' 37 Mo.L.Rev. 346 (1972)."

Therefore, we reject the State's suggestion that, in determining whether an actual conflict of interest existed in this case, we should not apply the same principles which would be applied if the petitioner and Ms. Wise had been represented by the same attorney throughout.

## C.

■ The Supreme Court has made it clear that representation of multiple defendants in a criminal case, by the same attorney or law partners, is not per se an actual conflict of interest. *Cuyler v. Sullivan, supra,* 446 U.S. at 348, 100 S.Ct. at 1718, 64 L.Ed.2d at 346; *Holloway v. Arkansas,* 435 U.S. 475, 482, 98 S.Ct. 1173, 1177, 55 L.Ed.2d 426, 433 (1978). As previously indicated, "a possible conflict inheres in almost every instance of multiple representation," *Cuyler v. Sullivan, supra,* 446 U.S. at 348, 100 S.Ct. at 1718, 64 L.Ed.2d at 346. There is, however, no precise test as to when the possible conflict of interest inherent in dual or multiple representation will become an actual conflict of interest. *See, e.g.,* Judge Lombard's discussion for the

---

4. *See* Maryland Code (1975, 1985 Repl.Vol., 1991 Cum.Supp.), § 9–304 of the Corporations and Associations Article.

court in *Camera v. Fogg,* 658 F.2d 80, 86–90 (2d Cir.), *cert. denied,* 454 U.S. 1129, 102 S.Ct. 981, 71 L.Ed.2d 117 (1981), and the authorities cited therein. *See also Parker v. Parratt,* 662 F.2d 479, 484 (8th Cir.1981), *cert. denied,* 459 U.S. 846, 103 S.Ct. 102, 74 L.Ed.2d 91 (1982).

Nevertheless, there is one multiple representation situation where the courts have generally taken the position that an actual conflict of interest exists. That is where an attorney, or law partners, represent in the same criminal case both the defendant and a codefendant (or other individual) who testifies adversely to the defendant.

Thus, *Ross v. Heyne, supra,* 638 F.2d at 982–985, involved the situation where several codefendants were charged with involvement in a particular robbery, where the defendant Ross was the only one pleading not guilty and going to trial, and where two of the codefendants, represented by a law partner of Ross's attorney, testified for the prosecution and adversely to Ross. The United States Court of Appeals for the Seventh Circuit held that "the trial counsel had an actual conflict of interest," 638 F.2d at 984. The court explained (*id.* at 983):

"An actual conflict would arise where defense counsel is unable to cross-examine a prosecution witness effectively because the attorney also represented the witness. *United States v. Mavrick,* 601 F.2d 921, 931 (7th Cir.1979). The problem that arises when one attorney represents both the defendant and the prosecution witness is that the attorney may have privileged information obtained from the witness that is relevant to cross-examination, but which he refuses to use for fear of breaching his ethical obligation to maintain the confidences of his client. *See* Code of Professional Responsibility, Canon 4 & DR 4-101(B)(2). 'The more difficult problem which may arise is the danger that counsel may overcompensate and fail to cross-examine fully for fear of misusing his confidential information.' *United States v. Jeffers,* 520 F.2d 1256, 1265 (7th Cir.1975), *cert. denied,* 423 U.S. 1066, 96 S.Ct. 805, 46 L.Ed.2d 656 (1976).

"A conflict of interest would also exist where one attorney represents co-defendants, and one defendant agrees to provide evidence against the other in return for an advantageous plea bargain. *United States v. Mavrick*, 601 F.2d at 931. Both types of conflicts occurred in this case for two co-defendants testified against Ross in exchange for favorable treatment by the state...."

A similar situation was present in *Stephens v. United States*, 595 F.2d 1066 (5th Cir.1979), and the United States Court of Appeals for the Fifth Circuit concluded (*id.* at 1070):

"Stephens was represented by an attorney with an actual, flagrant conflict of interest based on his concurrent representation of a witness for the prosecution to whom he owed the unfettered duty of complete, legitimate support, not the task of undermining and tearing down his acceptability. That prejudice may not be apparent from the record is not significant. The judgment must be reversed and the sentence vacated."

*See, e.g., United States ex rel. Williams v. Franzen*, 687 F.2d 944, 949 (7th Cir.1982) (attorney's representation of three codefendants held to be an actual conflict of interest where one of the codefendants testified adversely to the others); *Brown v. United States*, 665 F.2d 271 (9th Cir. 1982) (attorney's simultaneous representation of a prosecution witness and the defendant was held to be an actual conflict of interest); *Parker v. Parratt, supra*, 662 F.2d at 484 ("Clearly, a conflict would arise where one defendant attempts to exonerate himself by pointing the finger of guilt at codefendants"); *Taylor v. United States*, 226 F.2d 337 (D.C.Cir.1955) (representation of the defendant and a government witness by the same attorney was held to be a conflict of interest requiring a new trial); *Matter of Darr*, 143 Cal.App.3d 500, 502, 191 Cal.Rptr. 882, 884 (1983) ("defense counsel's simultaneous representation of a key prosecution witness constituted an actual conflict of interest which denied petitioner his right to effective assistance of counsel"); *People v. Dace, supra*, 153 Ill.App.3d at 896, 506

N.E.2d at 335 (where a prosecution witness was represented by one member of a law firm and the defendant was represented by another member of the same law firm, "we have a classic case of a *per se* conflict of interest which constitutes reversible error"); *People v. Duckmanton,* 137 Ill.App.3d 465, 467, 92 Ill.Dec. 211, 213, 484 N.E.2d 942, 944 (1985), *app. denied,* 111 Ill.2d 571, 94 Ill.Dec. 554, 488 N.E.2d 553 (1986) ("it is well established that simultaneous representation of a defendant and a State's witness by one attorney creates a *per se* conflict of interest"); *Commonwealth v. Hodge, supra,* 386 Mass. at 168, 434 N.E.2d at 1248 (where defense counsel's law firm represented a prosecution witness, defense counsel "was operating under a genuine conflict of interest from the time it became clear that [the witness] would give nontrivial testimony for the Commonwealth"); *People v. Wandell,* 75 N.Y.2d 951, 953, 555 N.Y.S.2d 686, 687, 554 N.E.2d 1274, 1275 (1990) ("a conflict existed by virtue of defense counsel's representation of the prosecution's chief witness"); *People v. McDonald,* 68 N.Y.2d 1, 9, 505 N.Y.S.2d 824, 828, 496 N.E.2d 844, 848 (1986) (in an arson case, defense counsel's simultaneous representation of the corporate victim, where an officer of the latter testified for the prosecution, constituted "an actual conflict"); *In Interest of Saladin,* 359 Pa.Super. 326, 333, 518 A.2d 1258, 1262 (1986). *See also Castillo v. Estelle,* 504 F.2d 1243 (5th Cir.1974); *United States v. Pinc,* 452 F.2d 507 (5th Cir.1971); *The People v. Stoval, supra,* 40 Ill.2d at 112–113, 239 N.E.2d at 443; *Com. v. Westbrook,* 484 Pa. 534, 540, 400 A.2d 160, 163 (1979).[5]

---

**5.** There are several decisions involving the situation where neither defense counsel nor an attorney associated with him was simultaneously representing the adverse witness but where defense counsel, or his partner or associate, had represented the adverse witness in a prior separate proceeding. In some of the cases dealing with defense counsel's representation of the adverse witness in a prior separate matter, it was held that an actual conflict of interest did exist, and in some of the cases the courts declined to find an actual conflict of interest. Several of the cases have indicated that whether or not there is an actual conflict of interest in this situation may depend upon the

■ We hold, therefore, that an actual conflict of interest existed in the present case where defense counsel's law partner represented a codefendant who testified adversely to the defendant. In fact, both Judge Angeletti and the prosecuting attorney expressly recognized that an actual conflict of interest existed. It was because of the conflict that Judge Angeletti imposed the gag order and later refused to lift the order. The prosecuting attorney opposed any rescission of the gag order because of the conflict of interest.

Once Ms. Wise agreed to testify against Mr. Austin, it was apparent that an actual conflict of interest existed requiring action by the trial court. As pointed out by Judge Thompson for the Court of Special Appeals in *Brown v. State*, 10 Md.App. 215, 230, 269 A.2d 96, 105 (1970), "where, as here, the conflict was so immediately obvious and apparent the trial court has the responsibility, with or without objection from counsel, to protect the right of the accused from being lessened by an actual ... conflict of interest."

### D.

As previously discussed, under the Sixth Amendment and Article 21 of the Maryland Declaration of Rights, for the petitioner to be entitled to a reversal of his convictions because of an actual conflict of interest, it must appear that the conflict of interest "adversely affected his lawyer's

---

relationship between the prior matter and the present criminal case, or upon other circumstances. *See generally, e.g., United States v. Bowie*, 892 F.2d 1494, 1500–1502 (10th Cir.1990); *United States v. Winkle*, 722 F.2d 605, 609–610 (10th Cir.1983); *United States v. Jeffers*, 520 F.2d 1256, 1263–1266 (7th Cir.1975), *cert. denied*, 423 U.S. 1066, 96 S.Ct. 805, 46 L.Ed.2d 656 (1976); *United States ex rel. Kachinski v. Cavell*, 453 F.2d 581 (3d Cir.1971); *People v. Grigsby*, 47 Ill.App.3d 812, 817–820, 8 Ill.Dec. 243, 246–48, 365 N.E.2d 481, 484–86 (1977); *People v. Perez*, 70 N.Y.2d 773, 521 N.Y.S.2d 215, 515 N.E.2d 901 (1987). Again, however, we have no occasion in the present case to express any views concerning the situation where defense counsel, or his partner or associate, had represented the adverse witness in a prior separate matter.

performance." *Cuyler v. Sullivan, supra,* 446 U.S. at 350, 100 S.Ct. at 1719, 64 L.Ed.2d at 347.

Many cases seem to have taken the position that an adverse effect upon defense counsel's representation is inherent under circumstances like those in the present case, *i.e.,* where the defendant's attorney or his law partner simultaneously represents a witness offering testimony damaging to the defendant. The duty of loyalty to the witness, and the restraint upon defense counsel's cross-examination of the witness because of the attorney-client privilege, is itself sufficient to be deemed an adverse effect upon representation. As explained by the United States Court of Appeals for the Seventh Circuit in *United States ex rel. Williams v. Franzen, supra,* 687 F.2d at 950:

> "[I]t is equally apparent that the adequacy of counsel's representation was affected by the conflict. As the district court noted, where two or more defendants have inconsistent stories relating to the crime charged, joint representation is impermissible. *See Turnquest v. Wainwright,* 651 F.2d 331 (5th Cir.1981). This is particularly true where one of the defendants cannot be effectively prevented by counsel from taking the stand even though prejudice to a co-defendant may result, or where counsel is precluded from cross-examining or impeaching a witness because of conflicting loyalties. *See Ross v. Heyne,* 638 F.2d 979 (7th Cir.1980); *United States v. Gaines,* 529 F.2d 1038 (7th Cir.1976). In the instant case, counsel could neither impeach the testimony of [the witness] on behalf of the petitioners, nor prevent [the witness] from testifying adversely to the petitioners. We need not speculate further about counsel's trial tactics as it is evident that a conflict of interest existed when counsel was faced with the adverse testimony of one co-defendant which implicated ... the other co-defendants. We conclude that counsel's joint representation violated petitioners' sixth amendment rights."

Similarly, in *Castillo v. Estelle, supra*, 504 F.2d at 1245, Judge Wisdom explained for the United States Court of Appeals for the Fifth Circuit:

"Here Bardin was not only the victim but also a principal witness for the prosecution. In these circumstances, counsel is placed in the equivocal position of having to cross-examine his own client as an adverse witness. His zeal in defense of his client the accused is thus counterpoised against solicitude for his client the witness. The risk of such ambivalence is something that no attorney should accept and that no court should countenance, much less create. We hold that the situation presented by the facts of this case is so inherently conducive to divided loyalties as to amount to a denial of the right to effective representation essential to a fair trial."

*See, e.g., Ross v. Heyne, supra*, 638 F.2d at 984; *Stephens v. United States, supra*, 595 F.2d at 1069–1070; *People v. Dace, supra*, 153 Ill.App.3d at 896, 106 Ill.Dec. at 628, 506 N.E.2d at 335; *Commonwealth v. Hodge, supra*, 386 Mass. at 168–169, 434 N.E.2d at 1248; *People v. Wandell, supra*, 75 N.Y.2d at 953, 555 N.Y.S.2d at 687, 554 N.E.2d at 1275. While the above-cited cases appear to take the position that an adverse effect upon defense counsel's representation is inherent in a situation like that in the case at bar, other cases do find actual evidence of an adverse effect on representation from the record in the particular case.

■■■ The record in this case confirms that Mr. Denholm's representation of the petitioner Austin was adversely affected. As previously mentioned, Mr. Denholm told the trial court that Ms. Wise had told Mr. Denholm that she had never seen Mr. Austin with money or drugs. Nonetheless, at the trial Mr. Denholm did not, attempt to impeach Ms. Wise with her prior inconsistent statements. Under the position taken by some courts, this circumstance alone would be deemed to constitute an adverse effect on representation. We express no opinion as to that view, because here the imposition of the gag order clearly adversely affected defense counsel's representation of Mr.

Austin. As partners in a two partner law firm, Mr. Den-holm and Mr. Salkin were each other's best resource. As earlier discussed, the firm was representing both clients, yet Mr. Denholm was precluded from discussing with Mr. Salkin anything relating to the case. When he perceived the conflict of interest, Judge Angeletti should have deter-mined whether Mr. Austin waived the conflict. If Mr. Austin chose not to waive the conflict, Judge Angeletti should have decided that the law firm could not continue to represent Mr. Austin because of the conflict. What Judge Angeletti chose to do was reach an improper compromise. He, in effect, discharged one-half of Mr. Austin's defense team. By imposing the gag order, Judge Angeletti did not reduce the conflict; he reduced the defense team. Judge Angeletti correctly determined there was a conflict; he should have determined if Mr. Austin waived the conflict. Had Mr. Austin waived the conflict, then Mr. Denholm could have continued his representation and the gag order would be unnecessary. Had Mr. Austin not waived any conflict, then Judge Angeletti would have been required to preclude the entire firm from representing Mr. Austin. The Judge should not have, in effect, discharged one-half of the firm.

It is clear, therefore, that the actual conflict of interest in this case adversely affected defense counsel's representa-tion.

### E.

The State's principal argument in this Court is that we should decline to decide at this time whether there existed an actual conflict of interest which adversely affect-ed defense counsel's representation. Relying on cases in-volving claims of ineffective assistance of counsel because of deficiencies in defense counsel's performance, the State argues that the issues presented in this case should be explored in a post conviction proceeding where testimony from trial counsel and others could be taken.

It is true that in cases involving claims of deficient performance by defense counsel, although not involving conflict of interest claims, we have taken the position that "[i]n the usual case, a post conviction proceeding is most appropriate." *Harris v. State*, 299 Md. 511, 517, 474 A.2d 890, 892–893 (1984), and cases there cited. As previously noted, however, *supra* n. 1, a claim that the constitutional right to counsel was violated because of defense counsel's conflict of interest has been treated by courts as different from a claim that the constitutional right to counsel was violated because of defense counsel's deficient performance apart from conflict of interest. Moreover, in *Pressley v. State, supra,* 220 Md. 558, 155 A.2d 494, and *Brown v. State, supra,* 10 Md.App. 215, 269 A.2d 96, the conflict of interest issue was decided on direct appeal based on the criminal trial record. In the instant case, it was the action of the trial court as the result of the conflict which caused an adverse effect on defense counsel's representation. There is no need to await a fact-finding post conviction hearing.

For the reasons previously set forth, the record in this case demonstrates that defense counsel labored under an actual conflict of interest; the action the trial court took as a result of that conflict adversely affected counsel's performance. Consequently, the judgment must be reversed.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND TO REMAND THE CASE TO THAT COURT FOR A NEW TRIAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.