570 A.2d 1229

James C. STEWART

v.

STATE of Maryland.

No. 102, Sept. Term, 1989.

Court of Appeals of Maryland.

March 12, 1990.

Nancy S. Forster, Asst. Public Defender (Alan H. Murrell, Public Defender, both on brief), Baltimore, for petitioner.

Diane E. Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS, CHASANOW and CHARLES E. ORTH, Jr. (retired), Specially Assigned, JJ.

CHARLES E. ORTH, Jr., Judge, Specially Assigned.

Judge Clifton T. Gordy, presiding in the Circuit Court for Baltimore City, received a call from the Criminal Assignment Clerk that a court trial was being transferred to his court. The criminal cause transferred was *State v. James C. Stewart* in which Stewart was charged with a sexual offense in the third degree and related crimes. When the case was called for trial, the prosecutor said that it was his

understanding that the trial would be by the court. Defense counsel observed, "Mr. Stewart prayed a jury trial before Judge [Elsbeth] Bothe sent the case here." Judge Gordy asked whether Stewart needed "to be formally arraigned at this time?" Defense counsel noted that Stewart had already been arraigned. Defense counsel said that the plea would be not guilty, and, with no expression of disapproval by Stewart, that Stewart had elected a court trial. The only pretrial motion was by the State for the sequestration of witnesses which was granted (the defense withdrew all of its motions). Both the prosecutor and defense counsel waived opening statements. The trial proceeded routinely to verdict (guilty of a sexual offense in the third degree) and the imposition of punishment (imprisonment for a term of one year).[1]

At the close of all the evidence, the court indicated that the trial would be continued to resume on the following day. Defense counsel raised the question of bail. She informed the judge that Judge Bothe had revoked bail and requested that Stewart "go back on the bail status that he was on." Judge Gordy said he did not know why Judge Bothe revoked bail and suggested that defense counsel discuss it with her. Defense counsel said, "My understanding was it was revoked during his trial." Judge Gordy ruled that "[Stewart's] bail status will remain unchanged until I can dispose of this matter tomorrow one way or the other on the merits." The judge declared:

> I am not getting into how he got his bail revoked, but one way or the other, it won't matter tomorrow. He'll either be free or we'll proceed to disposition. So he will remain in custody of the sheriffs at the present time in the Baltimore City Jail until tomorrow morning.

---

1. There is a hint in the transcript of proceedings that before trial there was a conference in Judge Gordy's chambers, off the record, at which it was determined that there would be no plea negotiations and that the State would oppose any request for probation.

Stewart then personally requested that he be released on bail. The judge denied the request. Nothing more was said.

When trial resumed the next morning, defense counsel's motion for a judgment of acquittal was denied. Arguments were heard and considered. The judge rendered the verdict. Stewart was allowed allocution through his counsel and his mother. Stewart said that he did not wish to be heard. The State recommended a period of incarceration for "five years suspend all but one year and five years supervised probation upon release from the Department of Correction." The court imposed sentence and explained to Stewart his post-trial rights. Defense counsel asked the judge to "set an appeal bond." The judge inquired, "What would be the ground for the appeal?" It was then, for the first time, that Judge Gordy learned why the case had been transferred from Judge Bothe's court and of the conditions imposed by her on the transfer.

The case was originally set for trial before Judge Bothe. Stewart did not appear. The judge held the case over until the next afternoon. Although informed of the new trial time by his counsel, Stewart again failed to appear. The judge revoked bail and issued a bench warrant. On the following Monday, three days later, Stewart telephoned and was informed by his counsel and by the judge's law clerk that he was obliged to appear for trial that day. Once again, he failed to appear. His appearance was finally obtained two days later through his bailbondsman. Whereupon the following colloquy ensued:

THE COURT: In any event, the warrant was finally served this morning on Mr. Stewart, and Mr. Stewart is here in custody after the Court has waited through three court days ready to proceed with this case.

Now, Hicks runs on Friday.[2]

---

**2.** *State v. Hicks,* 285 Md. 310, 403 A.2d 356 (1979). Maryland Rule 746 prescribed that a defendant be tried within 120 days as designed in the Rule. At the time of Stewart's trial, the Rule was numbered 4–271,

[DEFENSE COUNSEL]: It's my understanding, Your Honor—

THE COURT: What are we going to do? I mean, I'm ready to try the case, if need be.

[DEFENSE COUNSEL]: We're ready to try the case. It's an open—

THE COURT: I'm going to send the current case—

[DEFENSE COUNSEL]: I'm asking the Court to recuse itself.

THE COURT: I'm not recusing myself.

[DEFENSE COUNSEL]: Because the Court has made comments while we've been waiting to get Mr. Stewart in here, indicating that the Court has made up her mind.

THE COURT: I haven't made up my mind about anything other than getting Mr. Stewart here—

[DEFENSE COUNSEL]: Your Honor, you just selected another jury in another trial—

THE COURT: I have been waiting here in this court for three days to resolve this case, and it's going to be resolved in my court. He's not going to come into the court today, as he has, and say I don't want Judge Bothe because she's unfair to make me come to her court.

[DEFENSE COUNSEL]: Not that you're saying he's unfair for coming to court—

THE COURT: If you wish to ask me to recuse myself—

[DEFENSE COUNSEL]: I am.

THE COURT: I've heard your Motion. I deny it.

Shortly thereafter, the matter of the revocation of bail was discussed:

THE COURT: The warrant's been served on him, and I see no reason not to guarantee his presence for the trial, which I've had so much difficulty accomplishing, by keeping him detained until the matter is resolved.

---

and the time set was 180 days. *Hicks* held that the Rule was mandatory and that the sanction for noncompliance was dismissal of the charges. 285 Md. at 315–318, 403 A.2d 356.

THE DEFENDANT: Your Honor, I have no problems making it to my trial dates. I know my prior ones.

THE COURT: Friday, I was willing to give him the benefit of the doubt, even though you had contacted him and told him to be here. But now it's Wednesday. It so happened that a great deal of court time has been wasted because my court was totally clear on earlier dates this week, as you're aware, and both of you have been in constant touch with me trying to find out where Mr. Stewart was. The waste of resources that's resulted from his failure to appear is one that I'm not going to see duplicated.

[DEFENSE COUNSEL]: But I don't want that problem bleeding over into my trial, Judge. That's what I'm afraid is going to happen.

THE COURT: You mean if he doesn't—

[DEFENSE COUNSEL]: If it's tried here.

THE COURT: It's nothing to do with me, personally. Whatever court he goes to, he's going to have to be available. And he didn't know which court it was going to be assigned to, neither did I. He wants a jury trial, I assume. If he wants a court trial, I'll recuse myself. I do feel that I would be—

[DEFENSE COUNSEL]: If I can have a moment, Judge. Have a seat.

THE COURT: You want to discuss that with him now?

[DEFENSE COUNSEL]: Yes.

THE COURT: You want a few minutes to do it? But he's continued in custody.

After a brief recess, defense counsel addressed the judge: Your Honor, after discussing the options with my client, it's my understanding Mr. Stewart's going to be waiving a jury trial, requesting a court trial and requesting this Court to recuse itself.

Defense counsel then told Stewart in open court: Mr. Stewart, you have to make the waiver on the record. You have a right to be tried by a jury of your

peers, which would be twelve people you would help to select. All twelve people would have to agree that you are guilty. If one person said they weren't sure you were guilty, it would be hung jury and we would start over again. Or you could have a court trial, a trial before the court. In a trial before the court, a judge would sit alone, would listen to all the testimony and evidence, and the judge would decide whether or not you were guilty or innocent of the crime.

She asked Stewart:

Do you wish to waive a jury trial and request a court trial, sir?

Stewart replied that he did. Defense counsel repeated her request that the judge recuse herself.

THE COURT: I have said in a court trial, under the circumstances, I would recuse myself.

I understand that Judge Gordy is available for a court trial.

I want it understood, very clearly, two things: One is that there must be a court trial. He's waived his right to a jury trial. If it's a jury trial, my recusal does not stand. Is that understood?

[DEFENSE COUNSEL]: That's understood.

THE COURT: Secondly, the bail has been revoked and remains revoked. Of course you can appeal to any other judge. I assume if you want to bring the matter to Judge Gordy, you may. But at this time, the Defendant is in custody.

Thirdly, it was my understanding, when this case was sent to me from the move list before I knew anything about it at all, that the Defendant had rejected an offer of probation, five and five I believe I was told. Is that correct?

[DEFENSE COUNSEL]: That was back in September, I believe, Judge. In August.

THE COURT: Whenever it was, it was before another judge and another court.

[DEFENSE COUNSEL]: That's correct.

THE COURT: That offer was rejected and the Defendant then indicated his desire to be tried.

[DEFENSE COUNSEL]: That's correct.

THE COURT: The offer is not on the table as far as this court was concerned. When I was advised about the nature of the offense in this case, I indicated that I was not amenable to probation. And there has never been any intention, on the part of this Judge, to impose a probationary sentence to this Defendant. I want it made clear to Judge Gordy that it was not this Court's—this Court has not accepted any plea negotiation. And I very definitely have and would have rejected any probationary offer in this case, and I want that clear, [Prosecutor].

[PROSECUTOR]: Yes, ma'am. I'll make it clear to Judge Gordy.

[DEFENSE COUNSEL]: Thank you, Your Honor.

Thereupon, the case was sent to Judge Gordy.

When Judge Gordy asked defense counsel what ground there was for appeal, she recounted at length, and not without acrimony, what had occurred before Judge Bothe. She made perfectly clear that her objection to Judge Bothe's conduct was not a foofaraw, but was founded on a denial of Stewart's constitutional rights to a trial by jury, due process of law, and the effective assistance of counsel. Throughout her discourse, Judge Gordy declared that he did not "know anything about that." He asked, "Why was that issue not raised before me when you arrived here?" Defense counsel replied, "Because Judge Bothe said if any jury trial was granted, it had to come back to her courtroom." She assured the judge that this was on the record of the proceedings before Judge Bothe. Judge Gordy called for a bench conference on the record. At the conference, Judge Gordy asked defense counsel what she was talking about. She told him in detail. Judge Gordy said, "[L]et the record reflect that at no time did you ever request this court to be allowed to elect a jury trial [in] this case." Defense counsel acknowledged that this was correct.

Judge Gordy emphasized, "You never requested to change your election of this court." Defense counsel replied, "Not in here." At this point the prosecutor interjected to give the court the history of the case. His summary of the proceedings before Judge Bothe was true to the record and in full accord with the version of defense counsel. Judge Gordy stated:

> Let me say this. When the case arrived here, I'm the presiding judge.... [I]t is within my discretion as to whether to allow the defendant to change his election of court trial or jury trial. I was never advised that this was anything other than a court trial, and I was not familiar with the history of the case as to how it arrived here.

Defense counsel attempted to justify her failure to inform the judge, "[W]hen we came to chambers, you said you didn't want to discuss anything." The judge pointed out that he was referring only to plea negotiations, and the prosecutor agreed that was correct. Defense counsel said that she misunderstood. She confessed, "All I can say is grant an appeal bail for post-conviction because I made a huge boo-boo then." The judge explained:

> I am only letting the record reflect as to how the case came to me, and that I don't know what I would have done if you asked to change your election, as it was my case at that point, but I never had to reach that issue, because I was never asked.

He noted later that the case came to him in a strange posture. The prosecutor agreed. He acknowledged that he did not dispute the circumstances, as related, of the transfer of the case. Defense counsel stated her desire "to put one thing on the record":

> Mr. Stewart always insisted he wanted a jury trial, because at one point the case was worked out for probation, and he backed out of the plea on the last question, because he said he couldn't plead guilty to something he didn't do, and he wanted a jury to decide it. The only reason we waived the jury trial was because Judge Bothe

was, I don't know how else to word it, out of control. I have never had a judge yelling about a case as much as she was. She did have a right to be angry at him for being late, but it was going to bleed all over my case if I had tried it in there.

I never had a judge that had a jury sitting in the jury room with the attorneys ready to go, but shipped that case out just so he could hang onto another case. The only way I could get my case out of there and try to attempt to get Stewart a fair trial was to give up the jury trial right. I was told if the right was then granted again, I had to go back to the very place I thought I couldn't get a fair trial.

The judgment entered against Stewart was affirmed by the Court of Special Appeals on direct appeal. *Stewart v. State*, No. 1700, September Term, 1988, filed 22 June 1988, unreported. We granted Stewart's petition for a writ of certiorari and ordered that the case be certified to us. The questions presented in the petition revolve around the effectiveness of Stewart's waiver of his right to a jury trial.

■ The right of a person to a trial by jury is constitutionally guaranteed. Constitution of the United States, Amendment VI, applicable to state prosecutions under *Duncan v. Louisiana*, 391 U.S. 145, 149, 88 S.Ct. 1444, 1447, 20 L.Ed.2d 491 (1968); Maryland Declaration of Rights, Articles 21 and 24. The right may be voluntarily waived, that is, intentionally relinquished, *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), by a knowing, intelligent act done with sufficient awareness of the relevant circumstances and likely consequences, *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970). *See* Md.Rule 4–246; *Martinez v. State*, 309 Md. 124, 133–134, 522 A.2d 950 (1987). "Whether there is an intelligent waiver must depend on the unique facts and circumstances of each case." *Martinez* at 134, 522 A.2d 950.

■ This appeal turns on the voluntariness of the waiver of Stewart's right to a jury trial. The peculiar facts and circumstances of this particular case, as set out in the record before us, are not sufficient to warrant a conclusion that the waiver was involuntary. Stewart's lawyer did not divulge to Judge Gordy before the commencement of the trial the comments of Judge Bothe and the dictates and conditions imposed by her on the transfer of the case. Judge Gordy correctly recognized that it was entirely within his discretion as the presiding judge to allow Stewart to elect a jury trial rather than a court trial and that he was not bound by the dictates and conditions imposed by Judge Bothe on the transfer of the case. We made clear in *Hunt v. State,* 312 Md. 494, 500, 540 A.2d 1125 (1988), that "[t]he conduct of criminal trials falls within the sound discretion of the trial judge which will not be disturbed absent a clear abuse of discretion." We said in *State v. Frazier,* 298 Md. 422, 449, 470 A.2d 1269 (1984):

As a general principle, one judge of a trial court ruling on a matter is not bound by the prior ruling in the same case by another judge of the court; the second judge, in his discretion, may ordinarily consider the matter de novo.

In *Washburne v. Hoffman, Etc.,* 242 Md. 519, 525, 219 A.2d 826 (1966), we declared, in effect, that no trial judge is required to abdicate his own individual judgment merely because a colleague of coordinate jurisdiction has made a ruling. We are unable to conclude, on the record here, considering all the unusual facts and circumstances, that Stewart's constitutional rights to a jury trial were violated. By the same token we are unable to conclude that his constitutional guarantees of due process of law were offended. *See* Constitution of the United States, Amendment XIV; Maryland Declaration of Rights, Article 24. Our holdings are without prejudice to the right of Stewart to raise these jury trial and due process issues under the Post Conviction Procedure Act, Md.Code (1957, 1987 Repl.Vol., 1989 Cum.Supp.), Article 27, §§ 645A–645J.

■ It would have been far better for all concerned had defense counsel laid all her cards on the table before Judge Gordy when the case was called for trial. Another question is whether her failure to do so denied Stewart the effective assistance of counsel to which he was entitled under the Sixth Amendment to the Constitution of the United States. We have consistently held that the desirable procedure for determining claims of inadequate assistance of counsel, when the issue was not presented to the trial court, is by way of the Post Conviction Procedure Act. *See Harris v. State,* 295 Md. 329, 337–338, 455 A.2d 979 (1983); *State v. Zimmerman,* 261 Md. 11, 23–25, 273 A.2d 156 (1971). We adhere to that view. The way is also open for Stewart to pursue the matter of his counsel's effective assistance by way of post conviction procedures if he desires to do so.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED;

COSTS TO BE PAID BY PETITIONER.