836 A.2d 678

**Lawrence MOSLEY**

v.

**STATE of Maryland.**

**No. 16, Sept. Term, 2003.**

Court of Appeals of Maryland.

Nov. 26, 2003.

550

552

Allison E. Pierce, Julia Doyle Bernhardt, Asst. Public Defenders (Stephen E. Harris, Public Defender, on brief), for petitioner.

Mary Ann Ince, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), for respondent.

Argued before BELL, C.J., ELDRIDGE,* RAKER, WILNER, CATHELL, HARRELL, and BATTAGLIA, JJ.

BATTAGLIA, Judge.

Lawrence Mosley asks this Court to review a decision rendered by the Court of Special Appeals that he was not denied effective assistance of counsel when his counsel did not articulate insufficiency of the evidence as a specific basis for a motion for judgment of acquittal. For the reasons stated

---

* Eldridge, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

below, we conclude that the Court of Special Appeals should not have reviewed Mosley's claim on direct appeal.

## I. Background

### A. Facts

On January 13, 2001, at 12:45 a.m., Yvonne Bellamy and Angela Fields left a Chinese restaurant located in Baltimore. A man, later identified by the victims as Lawrence Mosley, approached them from behind and grabbed Ms. Fields while holding a weapon that appeared to be a gun to her back, threatening to kill both women if they did not cooperate with him. Mosley then took a purse, a back-pack, and their Chinese food and ordered them to walk away through a parking lot. As they began walking away, he told them to stop. He again approached the women, waving the weapon in the air, and began walking with them. He did so after two other people approached them through the parking lot. The two people turned out to be plainclothes police officers, Agent Kevin Allis and Officer Donna Jackson, working in the area, who had witnessed the events of the robbery and had called for backup.

When the backup subsequently arrived, Mosley released the women and began to run with the weapon in his hand toward Agent Allis, who then pulled his badge and gun out. Mosley dropped the weapon, which was admitted as State's Exhibit 1–A at trial. Agent Allis and Officer Jackson both identified State's Exhibit 1–A as the weapon used by Mosley, which they characterized as an "air gun." Agent Allis testified that he realized the weapon was plastic when Mosley dropped it. Exhibit 1–A was available to the jurors during their deliberations.

On March 7, 2002, Lawrence Mosley was convicted in the Circuit Court for Baltimore City of two counts of second degree assault, two counts of robbery, two counts of wearing or carrying a dangerous weapon, and two counts of robbery with a dangerous or deadly weapon. He was sentenced to two

thirteen-year terms of imprisonment, which were to be served concurrently.

## B. Appellate Procedural History

Mosley appealed to the Court of Special Appeals on March 11, 2002, raising a single issue for review. He argued that he had been denied effective assistance of counsel because his counsel had failed to state with particularity the grounds for the motion for judgment of acquittal made at the close of all the evidence. The evidence regarding the air gun, Mosley maintained, was insufficient to support his convictions for robbery with a dangerous or deadly weapon and wearing or carrying a dangerous weapon, and he argued that his counsel had failed to raise this point specifically, with the result that the issue of the insufficiency of the evidence relating to the dangerousness of the air gun was not preserved for appellate review. The State opposed Mosley's appeal, arguing that the issue of ineffective counsel should be resolved in a post-conviction proceeding.

When the record was transmitted to the Court of Special Appeals on May 10, 2002, however, the air gun was not included. Mosley filed a motion to correct the record, which the Court of Special Appeals granted. It appeared that the air gun, which was to be transmitted to the Court of Special Appeals, had been stolen from the trunk of Agent Allis's car. With the gun now lost, in support of his appeal, Mosley secured and filed affidavits of the Assistant State's Attorney, Mosley's trial counsel, and the trial judge as to their recollections of the gun's physical characteristics. Only the Assistant State's Attorney remembered the gun, stating in his affidavit that it was a "plastic air gun," "heavy," "weighed approximately ten pounds," and was "between seven and nine inches in length."

The Court of Special Appeals, in an unreported opinion, held that "the evidence was sufficient to sustain [Mosley's] convictions for robbery with a deadly weapon and wearing and carrying a concealed dangerous weapon" as well as concluded

that Mosley's ineffective assistance of counsel claim "must be decided in a post-conviction proceeding." [1]

We granted Mosley's petition for writ of certiorari, presenting the following questions for our review:

1. Did the Court of Special Appeals have the authority on direct appeal to decide whether Petitioner's trial counsel rendered ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights when he failed to argue with particularity the motion for judgment of acquittal after the State offered no evidence that the toy gun used in the robbery qualified as a dangerous or deadly weapon?

2. Given the conflicting statements contained in the Court of Special Appeals's opinion, did the Court actually address Petitioner's ineffective assistance of counsel claim, and, if the Court did address the merits of his claim, is its decision incorrect in light of the fact that the State lost the toy gun before it was transmitted to the Court and the Court subsequently failed to draw inferences about the gun in favor of Petitioner and instead based its decision solely on

---

1. These two determinations were, however, inconsistent. As we have pointed out, the ineffective assistance of counsel argument was predicated entirely upon trial counsel's failure to argue the insufficiency of the evidence relating to the dangerousness of the air gun. If the evidence was sufficient, then counsel's performance was not constitutionally ineffective in this regard. Moreover, the Court of Special Appeals's inconsistent holdings present problems under Maryland's Uniform Post Conviction Procedure Act, discussed *infra*, which requires that, in order for a defendant to have an issue considered in a post-conviction proceeding, "the alleged error [must not have been] previously and finally litigated or waived in the proceeding resulting in the conviction or in any other proceeding that the person has taken to secure relief from the person's conviction." *See* Maryland Code, § 102(b)(2) of the Criminal Procedure Article (2001). Here, the alleged error was "finally litigated" when the Court of Special Appeals held that the evidence was sufficient to convict Mosley, because Mosley's ineffective assistance of counsel claim was based on his assertion that his counsel should have moved for a judgment for acquittal with particularity based on the insufficiency of the evidence.

an affidavit by the Assistant State's Attorney which gave an implausible description of the gun?

Although the State opposed direct review of Mosley's claim in the Court of Special Appeals, the State argues before us that the Court of Special Appeals correctly found that Mosley was not denied effective assistance of counsel. The State also maintains that the Court of Special Appeals properly based its decision on the affidavit of the Assistant State's Attorney.

## III. Discussion

### A. The *Strickland* Analysis

The Sixth Amendment to the United States Constitution,[2] applicable to the states through the Fourteenth Amendment, and Article 21 of the Maryland Declaration of Rights [3] guarantee criminal defendants the right to the assistance of counsel at critical stages of the proceedings. *United States v. Cronic*, 466 U.S. 648, 659, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657, 668 (1984); *Strickland v. Washington*, 466 U.S. 668, 684–85, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674, 691 (1984); *Gideon v. Wainwright*, 372 U.S. 335, 343, 83 S.Ct. 792, 796, 9 L.Ed.2d 799, 805 (1963); *Glasser v. United States*, 315 U.S. 60, 69–70, 62 S.Ct. 457, 464–65, 86 L.Ed. 680, 699 (1942); *Lettley v. State*, 358 Md. 26, 33, 746 A.2d 392, 396 (2000); *State v. Wischhusen*, 342 Md. 530, 537, 677 A.2d 595, 598 (1996)(discussing the constitutional right to counsel at "critical stages" of the criminal case); *Austin v. State*, 327 Md. 375, 381, 609 A.2d 728, 730–31 (1992); *Harris v. State*, 303 Md. 685, 695 n. 3, 496 A.2d 1074, 1079 n. 3 (1985)(stating "[t]his Court has not distinguished between the right to counsel guaranteed by the Sixth and Fourteenth Amendments and the right provided by Art. 21 of the Maryland Declaration of Rights")(hereinafter

---

2. The Sixth Amendment provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence."

3. Article 21 of the Maryland Declaration of Rights provides in pertinent part: "That in all criminal prosecutions, every man hath a right ... to be allowed counsel...."

*"Harris III"*). Integral to this right is the right to effective assistance of counsel. *See Kimmelman v. Morrison,* 477 U.S. 365, 377, 106 S.Ct. 2574, 2584, 91 L.Ed.2d 305, 321 (1986); *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2063, 80 L.Ed.2d at 692; *In re Parris W.,* 363 Md. 717, 724, 770 A.2d 202, 206 (2001); *State v. Tichnell,* 306 Md. 428, 440, 509 A.2d 1179, 1185 (1986).

▌ The Supreme Court established in *Strickland v. Washington,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693, that a defendant must prove that counsel's competence failed to meet an objective standard of reasonableness and that counsel's performance prejudiced the defense in order to be successful in an ineffectiveness of counsel claim. *See also In re Parris W.,* 363 Md. at 725, 770 A.2d at 206. This two-pronged test serves to correct the adversarial process when it has failed to render a reliable trial result. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693 (stating that "[u]nless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable"). When a defendant is denied effective assistance of counsel, it is the integrity of the adversarial process that is compromised. *Id.* at 686, 104 S.Ct. at 2064, 80 L.Ed.2d at 692–93 (stating that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result").

▌ With respect to the first prong, the *Strickland* court explained that "the proper standard for attorney performance is that of reasonably effective assistance." *Id.* at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. "Prevailing professional norms" define what constitutes reasonably effective assistance, and all of the circumstances surrounding counsel's performance must be considered. *Id.* at 688, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. Because it is "tempting" for both a defendant and a court to second-guess a counsel's conduct after conviction, courts must be "highly deferential" when they scrutinize

counsel's performance. *Id.* at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. Reviewing courts must thus assume, until proven otherwise, that counsel's conduct fell within a broad range of reasonable professional judgment, and that counsel's conduct derived not from error but from trial strategy. *Harris III*, 303 Md. at 698, 496 A.2d at 1081.

 With respect to the second prong of the test, prejudice, the *Strickland* court explained that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066, 80 L.Ed.2d at 696. Because the ultimate goal of the adversarial process is to produce reliable trial results, the defendant must also be prejudiced by counsel's deficient performance in order to succeed under an ineffective assistance of counsel claim. *Id.* at 692, 104 S.Ct. at 2067, 80 L.Ed.2d at 696. A "limited" exception to the requirement of prejudice arises in claims involving conflict of interest. *Id.* (explaining that, although the conflict of interest rule is not *"per se,"* there is "a fairly rigid rule of presumed prejudice for conflicts of interest").

## B. Ineffective Assistance of Counsel Claims

### 1) Maryland's Uniform Post Conviction Procedure Act

 We have explained on numerous occasions that a post-conviction proceeding pursuant to the Maryland Uniform Post Conviction Procedure Act, Maryland Code, § 7–102 of the Criminal Procedure Article (2001),[4] is the most appropri-

---

4. Section 7–102 states:
 (a) *In general.*—Subject to subsection (b) of this section, §§ 7–103 and 7–104 of this subtitle and Subtitle 2 of this title, a convicted person may begin a proceeding under this title in the circuit court for the county in which the conviction took place at any time if the person claims that:
 (1) the sentence or judgment was imposed in violation of the Constitution of the United States or the Constitution or laws of the State;
 (2) the court lacked jurisdiction to impose the sentence; .
 (3) the sentence exceeds the maximum allowed by law; or

ate way to raise the claim of ineffective assistance of counsel. *In re Parris W.*, 363 Md. at 726, 770 A.2d at 207; *Ware v. State*, 360 Md. 650, 706, 759 A.2d 764, 793 (2000); *Perry v. State*, 344 Md. 204, 227, 686 A.2d 274, 285 (1996); *Walker v. State*, 338 Md. 253, 262, 658 A.2d 239, 243, *cert. denied*, 516 U.S. 898, 116 S.Ct. 254, 133 L.Ed.2d 179 (1995); *Stewart v. State*, 319 Md. 81, 92, 570 A.2d 1229, 1234 (1990); *Johnson v. State*, 292 Md. 405, 434, 439 A.2d 542, 559 (1982); *State v. Zimmerman*, 261 Md. 11, 24–25, 273 A.2d 156, 163 (1971). The Act allows the convicted person to attack the judgment collaterally by challenging the legality of the conviction and incarceration in a separate evidentiary proceeding.[5] *See Perry v. State*, 357 Md. 37, 72, 741 A.2d 1162, 1181 (1999); *Davis v. State*, 285 Md. 19, 22, 400 A.2d 406, 407 (1979). A post-conviction proceeding, often called a "collateral proceeding," brought under the Act is not an appeal of the judgment; rather, it is a collateral attack designed to address alleged constitutional, jurisdictional, or other fundamental violations

---

(4) the sentence is otherwise subject to collateral attack on a ground of alleged error that would otherwise be available under a writ of habeas corpus, writ of coram nobis, or other common law or statutory remedy.

(b) *Requirements to begin proceeding.*—A person may begin a proceeding under this title if:

(1) the person seeks to set aside or correct the judgment or sentence; and

(2) the alleged error has not been previously and finally litigated or waived in the proceeding resulting in the conviction or in any other proceeding that the person has taken to secure relief from the person's conviction.

**5.** As we explained in *Ruby v. State*, the Maryland Uniform Post Conviction Procedure Act "was enacted in 1958 'to create a simple statutory procedure, in place of the common law habeas corpus and coram nobis remedies, for collateral attacks upon criminal convictions and sentences.'" 353 Md. 100, 106 n. 4, 724 A.2d 673, 676 n. 4 (1999) (quoting, *Gluckstern v. Sutton*, 319 Md. 634, 658, 574 A.2d 898, 909 *cert. denied*, 498 U.S. 950, 111 S.Ct. 369, 112 L.Ed.2d 331 (1990)). The Act, however, does not abolish the common law remedies of habeas corpus and coram nobis. *Id.* These remedies may be suitable when a defendant is not incarcerated, subject to parole, or subject to probation because the Act does not provide a post-conviction proceeding remedy for claims in these circumstances. *Id.*

that occurred at trial. *See* Code, § 7–102 of the Criminal Procedure Article; *Maryland State Bar Ass'n v. Kerr*, 272 Md. 687, 689–90, 326 A.2d 180, 181 (1974)(explaining that a post-conviction proceeding in Maryland "does not constitute a part of the original criminal cause, but is an independent and collateral civil inquiry into the validity of the conviction and sentence"). Ineffective assistance of counsel is one of the claims cognizable under the Act, and it is the one most commonly raised. *Perry*, 357 Md. at 72–73 & 74 n. 10, 741 A.2d at 1181 & 1182 n. 10 (finding that the claim of evidentiary error fell within the Act's purview and noting also that other claims allowed under the Act include, among others, whether counsel rendered ineffective assistance, whether the prosecution suppressed exculpatory evidence, whether the government violated terms of a plea agreement, whether there was a failure to place on the trial record the factual basis of a guilty plea, whether there was use of perjured police testimony, whether the evidence was pursuant to an unlawful arrest, and whether a confession was erroneously admitted).

When a defendant attacks a criminal judgment on the basis of denial of effective assistance of counsel, the Act thus provides the defendant with the possibility of an evidentiary hearing, reflecting a recognition that "adequate procedures exist at the trial level, as distinguished from the appellate level, for taking testimony, receiving evidence, and making factual findings thereon concerning the allegations of error." *Wilson v. State*, 284 Md. 664, 675, 399 A.2d 256, 262 (1979). Post-conviction proceedings are preferred with respect to ineffective assistance of counsel claims because the trial record rarely reveals why counsel acted or omitted to act, and such proceedings allow for fact-finding and the introduction of testimony and evidence directly related to allegations of the counsel's ineffectiveness.[6] *Walker*, 338 Md. at

---

6. In fact, the Maryland Uniform Post Conviction Act has been described as more generous than many states because it allows for a full evidentiary hearing as opposed to a more limited one. *See* Edward A.

262, 658 A.2d at 243; *Johnson,* 292 Md. at 434–35, 439 A.2d at 559; *see, e.g., Redman v. State,* 363 Md. 298, 302, 768 A.2d 656, 658 (2001)(agreeing that the defendant was denied effective assistance of counsel where counsel failed to seek a change of venue and noting that, at the post-conviction hearing, the defendant's counsel "admitted that he was unaware that a capital defendant has the right of automatic removal of the case to another county"); *Oken v. State,* 343 Md. 256, 286–87, 681 A.2d 30, 41 (1996)(agreeing with the post-conviction court's findings that there was no ineffective assistance of counsel when counsel did not introduce evidence related to the defendant's alcohol and drug abuse and noting specifically counsel's explanation in the post-conviction hearing and his tactical reasons for not including such evidence).

 As we shall explore, the trial record clearly must illuminate why counsel's actions were ineffective because, otherwise, the Maryland appellate courts would be entangled in "the perilous process of second-guessing" without the benefit of potentially essential information. *Johnson,* 292 Md. at 435, 439 A.2d at 559 (quoting *People v. Miller,* 7 Cal.3d 562, 102 Cal.Rptr. 841, 848, 498 P.2d 1089 (1972)). As the Supreme Court recently explained, such second-guessing on the appellate court's part may compromise the *Strickland* analysis:

> When an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose. . . . The evidence introduced at trial . . . will be devoted to issues of guilt or innocence, and the resulting record in many cases will not disclose the facts necessary to decide either prong of the *Strickland* analysis. If the alleged error is one of commission, the record may reflect the action taken by counsel but not the reasons for it. . . . And evidence of alleged conflicts of interest might be found only in attorney-client correspondence or other docu-

Tomlinson, *Post–Conviction in Maryland: Past, Present and Future,* 45 Md. L.Rev. 927, 959 (1986).

ments that, in the typical criminal trial, are not introduced. Without additional factual development, moreover, an appellate court may not be able to ascertain whether the alleged error was prejudicial.

*Massaro v. United States*, 538 U.S. 500, 123 S.Ct. 1690, 1694, 155 L.Ed.2d 714, 720–21 (2003) (internal citations omitted). Therefore, the adversarial process found in a post-conviction proceeding generally is the preferable method in order to evaluate counsel's performance, as it reveals facts, evidence, and testimony that may be unavailable to an appellate court using only the original trial record. *Walker*, 338 Md. at 262, 658 A.2d at 243.

### 2) Direct Appeals

Although we prefer post-conviction proceedings to address denial of effective assistance of counsel claims, we have recognized, nevertheless, that there may be exceptional cases where the trial record reveals counsel's ineffectiveness to be "so blatant and egregious" that review on appeal is appropriate.[7,8] *Johnson*, 292 Md. at 435 n. 15, 439 A.2d at 559

---

7. Maryland Rule 8–301 provides, in pertinent part, the way to obtain appellate review by this Court:

 (a) **Generally.** Appellate review by the Court of Appeals may be obtained only:

 (1) by direct appeal or application for leave to appeal, where allowed by law;

 (2) pursuant to the Maryland Uniform Certification of Questions of Law Act; or

 (3) by writ of certiorari in all other cases.

 Maryland Rule 8–201 provides, in pertinent part, the way to obtain appellate review by the Court of Special Appeals:

 a) **By notice of appeal.** Except as provided in Rule 8–204, the only method of securing review by the Court of Special Appeals is by the filing of a notice of appeal within the time prescribed in Rule 8–202.

8. Another possible way of raising ineffective assistance of counsel claims is in a motion for a new trial. The Court of Special Appeals has had occasion to address this possibility in *Ruth v. Maryland*, 133 Md.App. 358, 757 A.2d 152 (2000). In that case, the defendant appealed after the denial of his motion for a new trial in which he claimed that he was denied effective assistance of counsel and that there was juror misconduct. *Id.* at 365, 757 A.2d at 156. After analyzing the merits of both of these claims, the Court of Special Appeals affirmed the

n. 15. Review of ineffective assistance of counsel claims may occur on direct appeal in a number of circumstances. For example, when a defendant alleges his counsel's effectiveness was compromised by prejudicial conflicts of interest, we have addressed the issue on direct appeal.[9] *See Austin*, 327 Md. at 393, 609 A.2d at 737 (concluding that the trial record sufficiently demonstrated that counsel's conflicts of interest adversely affected his performance); *see also Harris II*, 299 Md.

---

judgment of the trial court. *Id.* at 366, 757 A.2d at 156–57. Noting, however, that "appellate review of a trial attorney's conduct is best done in a post-conviction proceeding, rather than on direct appeal, where a trial-like setting will 'provide[ ] the opportunity to develop a full record concerning relevant factual issues,'" the Court of Special Appeals, nevertheless, decided to review the issue because, at the defendant's motion for a new trial hearing, "the court heard testimony and accepted evidence regarding [the defendant's] ineffective assistance of counsel claim." *Id.* at 367, 757 A.2d at 157. Although we have not considered this possibility directly and decline to do so here, we note that the denial of a new trial motion and the subsequent affirmance of the conviction on appeal may result in a determination that the substance of the allegation of ineffective assistance of counsel has been finally litigated under Maryland Code, § 7–106 of the Criminal Procedure Article (2001)(providing that an allegation of error is "finally litigated" when an appellate court of the State decides the merits of the allegation or "a court of original jurisdiction, after a full and fair hearing, decides on the merits of the allegation in a petition for a writ of habeas corpus or a writ of error coram nobis, unless the decision on the merits of the petition is clearly erroneous").

Another potential way of raising a claim of ineffective assistance of counsel is by including the claim within a motion to withdraw a guilty plea pursuant to Maryland Rule 4–242(g). In *Harris v. State*, we explained that, although we preferred post-conviction proceedings for ineffective assistance of counsel claims, the trial court could consider the merits of an ineffective assistance of counsel claim on a motion to withdraw a guilty plea. 299 Md. 511, 517, 474 A.2d 890, 892–93 (1984)(hereinafter *"Harris II"*). Such a view, we noted, is consistent with our preference for post-conviction proceedings because, in such an instance, the trial court is able to entertain evidence and testimony related to the ineffective assistance of counsel claim, thus creating a record sufficient to evaluate the claim. *Id.*

9. We emphasize, however, that, as we shall explain *infra*, whether the appellate court should hear the ineffective assistance of counsel claim on direct appeal is a different question, and it depends on whether the test we established in *In re Parris W.* is met, namely, that "the critical facts are not in dispute and the record is sufficiently developed to permit a fair evaluation of the claim." *In re Parris W.*, 363 Md. at 726, 770 A.2d at 207.

at 518, 474 A.2d. at 893 (acknowledging that an ineffective assistance of counsel claim may be heard on direct appeal when facts related to the claim were heard by the trial court as part of a motion to withdraw a guilty plea). In addition, this Court has reviewed ineffective assistance of counsel claims on direct appeal when reviewing death penalty cases, as required by statute. *See* Maryland Code, § 2–401 of the Criminal Law Article (2002).[10] *See Harris II,* 299 Md. at 518, 474 A.2d at 893.

A convicted person, in limited circumstances, thus may raise the claim that he or she was denied effective assistance of counsel on direct review without the benefit of a post-conviction proceeding. *See In re Parris W.,* 363 Md. at 727, 770 A.2d at 207; *Austin,* 327 Md. at 394, 609 A.2d at 737; *Harris II,* 299 Md. at 518, 474 A.2d. at 893. The Supreme Court has evaluated ineffective assistance of counsel claims on direct review in the rare instance where the critical facts are undisputed, the record is sufficiently developed, and/or the legal representation is so egregiously ineffective that it is obvious from the trial record that a defendant was denied his Sixth Amendment right to counsel. *See Massaro,* 538 U.S. 500, 123 S.Ct. at 1694, 155 L.Ed.2d at 720–21 (explaining that post-conviction review is preferable to direct appeal for deciding claims of ineffective assistance and also holding that failure to raise an ineffective assistance of counsel claim on direct appeal does not bar the claim from being brought in a post-conviction proceeding). Numerous other federal courts also have so opined. *See, e.g., United States v. Khedr,* 343 F.3d 96, 99–100 (2nd Cir.2003)(declining to hear the defendant's ineffective assistance of counsel claim and, without describing the grounds for the claim, noting a "baseline aversion to resolving ineffectiveness claims on direct review" but allowing direct appeal in such cases when their "resolution is

---

10. Maryland Code, § 2–401(a)(1) of the Criminal Law Article provides, in pertinent part: "After a death sentence is imposed and the judgment becomes final, the Court of Appeals shall review the sentence on the record."

'beyond any doubt' "); *United States v. Hughes,* 330 F.3d 1068, 1069 (8th Cir.2003)(explaining, in a case where defense counsel went to trial to assert and preserve issues that did not relate to the defendant's factual guilt and did not object to the presentence report recommending that the defendant's offense level be reduced by two levels for acceptance of responsibility under the U.S. Sentencing Guidelines, that collateral proceedings are more appropriate than direct review because ineffective counsel claims usually involve facts outside the original record); *United States v. King,* 119 F.3d 290, 295 (4th Cir.1997)(observing, in a case where the defendant claimed his counsel was constitutionally ineffective for failing to move to dismiss the indictment based upon a violation of his right to a speedy trial and for failing to file timely objections to the presentence report, that it is "well settled" that ineffective assistance of counsel claims should be reviewed at the district court level rather than on direct appeal). Various of our sister state courts in states in which the Uniform Post Conviction Procedure Act is in effect also have so held. In *State v. Zernechel,* 304 N.W.2d 365, 367 (Minn.1981), the Supreme Court of Minnesota stated that, without indicating with specificity the defendant's claims regarding that he was denied effective assistance of counsel, direct appeals are disfavored because "we do not have the benefit of all the facts concerning why defense counsel did or did not do certain things." In *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114, 125–26 (1995), the Supreme Court of Appeals of West Virginia, in a case where the defendant claimed that her trial counsel lacked an effective trial strategy by failing to offer instructions on her affirmative defense of self-defense, concluded that review of the case on direct appeal was inappropriate because the record did not, and often could not, adequately reveal the counsel's trial strategy, explaining that "[t]he mission of the appellate judiciary is neither to mull theoretical abstractions nor to practice clairvoyance" and that "[t]he very nature of an ineffective assistance of counsel claim demonstrates the inappropriateness of review on direct appeal." *See also State v. Kelley,* 265 Neb. 563, 658 N.W.2d 279, 290 (2003)(finding the record to be

insufficient regarding counsel's trial strategy to determine on direct appeal whether counsel's performance was deficient in his cross-examination of certain witnesses, his failure to object to certain fruits of the purportedly illegal search, and his failure to object to certain evidence that the defendant claimed was irrelevant); *State v. Cyran*, 586 A.2d 1238, 1240 (Me.1991)(declining to hear on direct review defendant's "numerous" claims of ineffective assistance of counsel claims and, without elucidating those claims, explaining that they refuse to review ineffective assistance of counsel claims on direct appeal, "except in cases where the appeal record shows beyond the possibility of a rational disagreement that the defendant was inadequately represented, leaving defendant to seek relief through post-conviction proceedings").

The rare instances in which we have permitted direct review are instructive, because they indicate our willingness to entertain such claims on direct review only when the facts in the trial record sufficiently illuminate the basis for the claim of ineffectiveness of counsel. As we explained in *In re Parris W.*, direct review is an exception that applies only when "the critical facts are not in dispute and the record is sufficiently developed to permit a fair evaluation of the claim." 363 Md. at 726, 770 A.2d at 207. In that case, the defense counsel, after issuing subpoenas for five witnesses corroborating the defendant's alibi for the wrong date, conceded he made the scheduling error. *Id.* at 720, 727, 770 A.2d at 203, 208. Because these facts were "undisputed" and the trial record was "developed sufficiently," we concluded that it was appropriate for us to determine on direct review that counsel rendered ineffective assistance under the *Strickland* analysis. *Id.* at 727, 770 A.2d at 207.

Similarly, we determined in two cases that direct review was appropriate because defense counsel had apparent conflicts of interest. In *Austin*, where two law partners continued to represent two criminal codefendants even after one defendant decided to testify against the other, we concluded that the trial record sufficiently demonstrated that defense counsel's conflict of interest adversely affected his perform-

ance. 327 Md. at 387, 609 A.2d at 729. We also had occasion to address another conflict of interest issue in *Lettley*, in which defense counsel represented another client who had not been charged with the crime at issue but had confessed to committing the crime to him. 358 Md. at 29, 746 A.2d at 394. We concluded that, although ineffective assistance of counsel claims were best reviewed in a post-conviction proceeding, "[w]here the claim is based on conflict of interest, and the record is clear," direct review is appropriate.[11] *Id.* at 32, 746 A.2d at 396.

We have been willing, thus, to consider these claims on direct review only when the facts found in the trial record are sufficiently developed to clearly reveal ineffective assistance of counsel and that counsel's performance adversely prejudiced the defendant. *See In re Parris W.*, 363 Md. at 726, 770 A.2d at 207. We utilize the same rationale when we have declined to review claims on direct appeal. In *Johnson*, for example, we emphasized that, if the trial record does not reveal why counsel made certain decisions and only suggests he may have provided ineffective assistance, we prefer post-conviction proceedings because they provide counsel with the opportunity to explain his actions. 292 Md. at 435, 439 A.2d at 559. In that case, we declined to consider the defendant's ineffective assis-

---

11. Notably, conflict of interest issues in ineffective counsel cases often do not require a showing of prejudice. *See Lettley*, 358 Md. at 35, 746 A.2d at 397. For this reason, it appears we have been more likely to evaluate counsel's performance on direct review when conflict of interest is clearly at issue. *See Austin*, 327 Md. at 394, 609 A.2d at 737. We note, however, that, even though conflict of interest issues may be revealed in the criminal trial record and thus capable of evaluation on direct review, post-conviction proceedings may nevertheless be more appropriate in cases where the trial record does not conclusively reflect how the conflict of interest adversely affected counsel's performance. *See, e.g., Massaro*, 538 U.S. 500, 123 S.Ct. at 1694, 155 L.Ed.2d at 720–21 (stating that "evidence of alleged conflicts of interest might be found only in attorney-client correspondence or other documents that, in the typical criminal trial, are not introduced"); *Walker*, 338 Md. at 262, 658 A.2d at 243 (concluding that whether defense counsel's representation of two co-defendants constituted a conflict of interest adversely affecting counsel's performance was best determined in a post-conviction proceeding rather than on direct review).

tance claim that his counsel failed "to develop a coherent defense theory" because the record did not reveal why counsel acted as he did, even though the defendant's new counsel cited "many alleged errors by counsel appearing on the face of the record." *Id.* at 434–35, 439 A.2d at 558–59. Similarly, in *Stewart,* a case where the defendant's counsel declined to tell a new trial judge that the previous trial judge had recused herself from the case only if the defendant would waive his right to a jury trial and never asked the new judge to allow the defendant to elect a jury trial, we determined that the facts in the record were not sufficiently developed to evaluate whether the defendant voluntarily waived his right to a jury trial or whether his election was premised on counsel's ineffective representation. 319 Md. at 91–92, 570 A.2d at 1234. Moreover, in *Walker,* we declined to evaluate counsel's performance on direct review even though counsel remained silent throughout the trial because we believed a "full record concerning relevant factual issues" needed to be developed in a post-conviction proceeding. 338 Md. at 261–62, 658 A.2d at 243.

### 3) Mosley's Claim

According to Mosley, his counsel was ineffective because he did not articulate as one of the bases for the motion for judgment of acquittal that the State did not prove that the air gun was a dangerous or deadly weapon.[12] In so doing, Mosley

---

12. Maryland Code, § 6–104 of the Criminal Procedure Article enables a defendant to make a motion for judgment of acquittal at the close of the State's case and at the close of all evidence. It provides, in pertinent part:

 *a) Motion after State's evidence.—*
 (1) At the close of the evidence for the State, a defendant may move for judgment of acquittal on one or more counts or on one or more degrees of a crime, on the ground that the evidence is insufficient in law to sustain a conviction as to the count or degree.
 (2) Subject to paragraph (3) of this subsection, if the court denies the motion for judgment of acquittal, the defendant may offer evidence on the defendant's behalf without having reserved the right to do so.
 (3) If the defendant offers evidence after making a motion for judgment of acquittal, the motion is deemed withdrawn.

asks us to accept two premises: first, that the evidence was not sufficient to support his convictions of robbery with a dangerous or deadly weapon and wearing a dangerous or deadly weapon; and, second, that his counsel was ineffective *per se* as a result of his failure to articulate specific bases for the motion for judgment for acquittal. As we demonstrate below, we conclude that we cannot determine whether the evidence was sufficient and so, applying the test we elucidated in *In re Parris W.*, we cannot evaluate on direct appeal whether or not his counsel provided ineffective assistance because critical facts are in dispute.

 In contrast to *In re Parris W.*, the critical facts here are, without a doubt, in dispute. First, the weapon itself is now missing from the record. Second, after requesting affidavits to supplement the record at the Court of Special Appeals, Mosley now disputes the contents of one of those affidavits, disagreeing with the Assistant State's Attorney's description of the lost air gun's characteristics.[13] Yet, in spite of these

---

(b) *Motion after all evidence.*—

(1) The defendant may move for judgment of acquittal at the close of all the evidence whether or not a motion for judgment of acquittal was made at the close of the evidence for the State.

(2) If the court denies the motion for judgment of acquittal, the defendant may have review of the ruling on appeal.

Maryland Rule 4–324(a) establishes the procedure for making a motion for judgment of acquittal:

A defendant may move for judgment of acquittal on one or more counts, or on one or more degrees of an offense which by law is divided into degrees, at the close of the evidence offered by the State and, in a jury trial, at the close of all the evidence. The defendant shall state with particularity all reasons why the motion should be granted. No objection to the motion for judgment of acquittal shall be necessary. A defendant does not waive the right to make the motion by introducing evidence during the presentation of the State's case.

13. Mosley also suggests that, because there is little testimony in the record about the air gun's "weight" and "density," the State failed to prove it was a dangerous or deadly weapon. This argument, however, ignores the fact that there may have been no need to include such detail at trial because the air gun was not lost until after the trial was completed and that the jurors were able to see, touch, and evaluate the air gun during their deliberations.

problems with the critical facts, Mosley also argues that the face of the record is sufficient enough to support his assertion that the air gun was not a dangerous or deadly weapon-even as he attempted to suggest in his brief and at oral argument that the Assistant State Attorney's characterization of the air gun was incorrect. The following excerpt from oral argument more than indicates that the characteristics of the air gun were, and are, still at issue:

> Mosley: But I think on the face of this record it's very plain that the State didn't prove that this plastic toy gun could have been used as a bludgeon. There's no testimony about it's weight, about its heaviness, about its density. The fact that it's plastic in and of itself suggests that it was lightweight—

> The Court: Well, plastic comes in kinds of varieties, there really are toy guns that can't hurt anybody but you can get plastic that can do a lot of damage.

> \* \* \*

> That was before the trial court also, wasn't it?

> Mosley: There's no indication that the Judge picked it up. Obviously he saw it, and the gun itself did go back into the jury room during deliberations.

> The Court: So it was in evidence?

> Mosley: It was in evidence. But plastic in and of itself, even if it's a heavier plastic than a water pistol, you know, a plastic water pistol, is still inherently a lightweight object that—

> The Court: This wasn't a water pistol, this was an air gun.

> Mosley: An air gun, and in doing research on the various types of air guns, the heaviest plastic air gun I could find weighed just under 500 grams, which is about 1 pound. There are certainly metal air guns that weigh a little bit more, not much more but a little bit more, but—

> The Court: It shoots a projectile, does it not? Whether it's plastic or metal? Air forces something out of the gun.

Mosley: Correct. And it's my understanding that, maybe with the plastic gun, the projectile it shoots is plastic.

The Court: Is what?

What kind of air gun was it? Was it a lightweight or heavy plastic? These questions and more remain unresolved.

We have no ability to evaluate whether there was sufficient evidence to support Mosley's conviction as to robbery with a dangerous or deadly weapon and wearing a dangerous or deadly weapon. Therefore, we simply cannot conclude with confidence, as Mosley urges, that the air gun was nothing more than a "plastic toy gun," and, thus, cannot be a dangerous or deadly weapon *per se*.[14] *See Brooks v. State*, 314 Md. 585, 600–01, 552 A.2d 872, 880 (1989)(concluding that a plastic toy gun was not a dangerous or deadly weapon and explaining the test for determining whether an object qualifies as a dangerous or deadly weapon, listing as one of the elements for dangerousness whether the weapon could be used as a "bludgeon").

Because we cannot conclude that the evidence was insufficient to sustain Mosley's conviction, we cannot take the next step urged by Mosley and determine that his counsel provided ineffective assistance by not making a motion for judgment for acquittal with particularity. As long as the sufficiency of the evidence is at issue, the possibility remains that Mosley's counsel lacked grounds to make the motion in the first place. *See State v. Scalise*, 660 N.W.2d 58, 62 (Iowa 2003)(concluding that defendant's counsel was not ineffective because, even if his motion for judgment of acquittal was made without specificity, the jury had substantial evidence to find the defendant guilty). Given this possibility, under *Strickland*'s two-pronged analysis, Mosley's counsel's failure to support the motion with

---

14. We note that the jury was told that the air gun was not a "real" gun, heard testimony about Mosley holding the gun, which was described by the victims as "black" and "hard," to the back of the victims while simultaneously threatening to kill them if they did not cooperate, and had the opportunity to review the air gun for themselves in the jury room while they deliberated.

particularity either may not have been ineffective assistance of counsel or may not have been prejudicial to the defendant. Therefore, we conclude that the issues presented are more appropriate for elucidation in a post-conviction proceeding.

As a result, although there may be instances where failure to make a motion for judgment for acquittal with particularity might be determined to be ineffective counsel based on the trial record alone, we are unwilling to make such a failure *per se* ineffective assistance of counsel. As we explained in *In re Parris W.* and iterate here, direct review is only appropriate if the record is sufficiently developed and the critical facts are not in dispute. 363 Md. at 726, 770 A.2d at 207.

Mosley's case is distinguishable from the cases he cites in support of his position because, in those cases, the critical facts regarding counsel's performance were undisputed and specific, and the record was more than sufficient to allow the appellate court to evaluate the case. *See United States v. Bass,* 310 F.3d 321, 330 (5th Cir.2002); *United States v. Jimenez Recio,* 258 F.3d 1069, 1074 (9th Cir.2001), *rev'd on other grounds,* 537 U.S. 270, 123 S.Ct. 819, 154 L.Ed.2d 744 (2003); *United States v. Rosalez–Orozco,* 8 F.3d 198, 199 (5th Cir.1993); *People v. West,* 187 Ill.2d 418, 241 Ill.Dec. 535, 719 N.E.2d 664, 680 (1999); *State v. Westeen,* 591 N.W.2d 203, 207 (Iowa 1999); *In re Parris W.,* 363 Md. at 726–27, 770 A.2d at 207; *Holland v. State,* 656 So.2d 1192, 1197–98 (Miss.1995); *State v. Denis,* 112 Ohio App.3d 397, 678 N.E.2d 996, 998 (1996). In Mosley's case, however, the critical facts relating both to the sufficiency of the evidence and to his counsel's failure to move for judgment for acquittal with particularity are neither clear nor undisputed. We, thus, conclude that a post-conviction proceeding is the appropriate venue to evaluate Mosley's ineffective assistance of counsel claim.

### III. Conclusion

For the foregoing reasons we adhere to our long-standing view that ineffective assistance of counsel claims are best tested in post-conviction proceedings and that review of such claims on direct appeal is limited to the rare exception where

the record is sufficiently developed and the critical facts are not in dispute. We, therefore, vacate the order of the Court of Special Appeals and remand with directions to the Court of Special Appeals to dismiss the appeal. The vacating of the order shall not prejudice Mosley's right to assert his claims in a post-conviction proceeding, should he desire to do so.[15]

*JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED AND CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO DISMISS THE APPEAL WITHOUT PREJUDICE. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.*

WILNER, J., concurs.

Concurring Opinion by WILNER, J.

I concur in the judgment because I agree that the record before us, being the same record that was before the Court of Special Appeals, is inadequate to permit a determination of whether the evidence was legally sufficient to support the conviction. I offer the following comment, however.

---

**15.** Because we are vacating the Court of Special Appeals's decision and preserving Mosley's ability to pursue his claims in a post-conviction proceeding, we decline to address his claim that the Court of Special Appeals should not have supplemented the trial record with an affidavit describing the lost air gun. We note, however, that it is well-established that an appellate court is not a trier of fact. *Harris III*, 303 Md. at 698, 496 A.2d at 1080. Mosley's claim that he was rendered ineffective assistance of counsel is directly related to the disputed factual attributes of the gun.

Our comments here in no way limit the appellate court from allowing the record to be corrected on appeal when necessary pursuant to Maryland Rule 8–414 (providing the appellate court with the authority to "order that an error or omission in the record be corrected" and that a "motion that is based on facts not contained in the record or papers on file in the appellate court and not admitted by all the other parties shall be supported by affidavit"). Given the situation in this case, however, where the parties dispute the characteristics of lost evidence, we believe that the trial court in a post-conviction proceeding is better able to evaluate whatever evidence and testimony may be introduced regarding the weapon and whether it could be characterized as dangerous or deadly.

Maryland Rule 4–324(a) permits a defendant, at the close of the evidence offered by the State and, in a jury trial, at the close of all of the evidence, to move for judgment of acquittal on one or more counts or on one or more degrees of an offense that is divided into degrees. The Rule requires, however, that the defendant "shall state with particularity all reasons why the motion should be granted." This Court has held that, if such a motion is not made, an appellate court will not review the case to determine the sufficiency of the evidence. The issue-perhaps the most important one in the case—is regarded as waived, unpreserved. *Wersten v. State,* 228 Md. 226, 179 A.2d 364 (1962). We have also held that, even if such a motion *is* made, the failure of the defendant to particularize his/her complaint—to point out how and why the evidence is legally insufficient—also withdraws the issue from appellate review. *See State v. Lyles,* 308 Md. 129, 517 A.2d 761 (1986); *Muir v. State,* 308 Md. 208, 517 A.2d 1105 (1986); and *cf. Warfield v. State,* 315 Md. 474, 554 A.2d 1238 (1989).

A lawyer is not required to make a motion for judgment of acquittal unless there is a reasonable basis for the motion, and, indeed, it likely would be a violation of Rule 3.1 of the Code of Professional Responsibility for the lawyer to make such a motion frivolously—without a reasonable basis in the record.[1] Nonetheless, it has become routine in criminal cases for counsel to file such a motion, regardless of the state of the record. There are two reasons, both pragmatic. Nothing is lost by filing the motion, but everything may be lost if one is not filed. In the heat of the battle, one may never know for certain whether the presiding judge might entertain some doubt about the legal sufficiency of the evidence and be inclined to grant the motion, in whole or in part. Whether any group of appellate judges would find the evidence insuffi-

---

1. Rule 3.1 states that "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. A lawyer may nevertheless so defend the proceeding as to require that every element of the moving party's case be established."

cient would, in that situation, be irrelevant, for if the trial judge grants a judgment of acquittal, that ends the matter, at least to the extent of the acquittal. On the other hand, if the motion is not made, the issue is lost, both at the trial and appellate levels. The trial judge is not given the opportunity to rule and the appellate court is not given the opportunity to find the evidence insufficient, even if the trial judge would have found otherwise. From the point of view of a *Strickland* analysis, the issue, as to both prongs—deficient performance and prejudice—will, in most cases, depend entirely on whether a reviewing court, in post conviction proceedings, concludes that there was a proper basis for such a motion.

If a motion is made but not particularized, the situation may be worse. There is always the chance that, even if not particularized, the motion may be granted by the trial judge, who might well conclude on his or her own analysis that the evidence is insufficient. If that happens, of course, the issue will disappear and will never surface in either an appeal or a post conviction proceeding. The concern we face is when such a motion is not granted. If an unparticularized motion is not granted, the defendant has lost the right of appellate review, just as if the motion had never been made at all, but that loss may be made worse by the assumption that, in making even the generalized motion, the lawyer believed that there was some basis for it. The deficiency withdraws from appellate review an issue that the lawyer presumably believed existed.

The end result will be the same—post conviction relief will be unavailable, because of the prejudice prong of *Strickland,* unless the reviewing court finds that the evidence as to at least one conviction was legally insufficient. I would find it difficult, however, to justify a conclusion that there was not deficient performance. If the lawyer believed that there was enough of a basis for the motion to make it, how could it not be deficient performance to fail to make it in such a way as to make it effective? This is one instance in which simply making a motion "for the record" has no effect (unless, fortuitously, it is granted).

This is an area in which trial judges can, and should, provide some meaningful assistance. A motion for judgment of acquittal asks the judge to end the case, or at least part of the case. The judge is entitled to know every possible basis for the motion, and should not permit counsel to rest on an unparticularized motion, unless, as sometimes happens, the judge intends to grant the motion based on his or her own analysis. It is a simple matter to ask counsel, "on what ground," or to ask counsel to explain what necessary element is missing. I do not suggest that the judge has any legal duty or responsibility to make that inquiry, and, even when made, it will not necessarily result in all proper grounds being stated, but (1) it might help in some cases, and (2) it will not leave the record showing only a legally useless motion.