Circuit Court for Baltimore County
Case No. 03K01001300
Hon. Ruth A. Jakubowski

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2003

September Term, 2015

---

TAVON FULLWOOD

v.

STATE OF MARYLAND

---

Meredith
Friedman
Raker, Irma S.
            (Senior Judge, specially assigned),
            JJ.

---

Opinion by Raker, J.

---

Filed:  August 31, 2017

* Judge Kathryn Grill Graeff did not participate,
pursuant to Md. Rule 8-605.1, in the Court's
decision to report this opinion.

Tavon Fullwood, appellant, was convicted by a jury in the Circuit Court for Baltimore County on April 19, 2002, of attempted first-degree murder, first-degree rape, first-degree sexual offense, and attempted sodomy. In this post-conviction appeal, appellant presents one question for our review:

> "Did the post-conviction court abuse its discretion in denying appellant's petition for post-conviction relief on the grounds that defense counsel did not provide ineffective assistance in failing to investigate and call an expert witness to testify regarding the evidence of sexual assault, and that this contention 'has been finally litigated on appeal?'"

We shall hold that defense counsel's failure to investigate and call an expert witness to testify regarding the evidence of sexual assault did not constitute ineffective assistance and shall affirm the judgment.

I.

Appellant was convicted by a jury on April 19, 2002, in the Circuit Court for Baltimore County of attempted first-degree murder, first-degree rape, first-degree sexual offense, and attempted sodomy. The court sentenced appellant to a term of life imprisonment for the attempted murder; a consecutive term of life imprisonment for the rape, with the balance suspended; a concurrent term of life imprisonment for the sexual offense; and a concurrent term of ten years' imprisonment for the attempted sodomy. Appellant filed a timely appeal to the Court of Special Appeals which affirmed the conviction in an unreported opinion on June 7, 2004. *Fullwood v. State,* September Term 2002, No. 2197 (filed June 7, 2004). The Court of Appeals denied appellant's petition for

writ of certiorari on September 21, 2004. On November 7, 2012, appellant filed a Petition for Post Conviction Relief. The State filed an Answer on December 3, 2013. Judge Ruth A. Jakubowski held the post-conviction hearing on December 19, 2013 and continued and concluded it on May 27, 2015. Judge Jakubowski denied the post-conviction Petition on September 3, 2015. Appellant filed a timely Application for Leave to Appeal and this Court granted appellant's Application on December 1, 2016.

Because appellant is arguing in this appeal that his counsel provided ineffective assistance by failing to investigate and call an expert witness to testify regarding the evidence of sexual assault, we set out the relevant factual background: On March 15, 2001, at around 3:00 a.m., Baltimore County Police found Ms. Luzer at her apartment. Police responded to a call from residents of the apartment located below Ms. Luzer. The neighbor testified she heard screams, woke up her boyfriend, and then called the police. She heard window blinds moving and thought she saw a person's shadow drop from above and flee. The boyfriend also heard screaming but thinks he saw two shadows fall past the apartment. Officers found Ms. Luzer naked and face down on her bed. She was covered in blood and had been stabbed several times in the chest, torso, and arms. While waiting for an ambulance to arrive, an officer administered first aid to Ms. Luzer and asked if she had been sexually assaulted. She said no. A detective on the scene requested that the sexual assault forensic examiner collect evidence.

Police discovered potential blood stains along the handrail of the outside hallway which led from Ms. Luzer's apartment building to the apartment building where appellant's

cousin, Melvin Fullwood, sometimes resided with his girlfriend, Chantal Veanie, and their three-year-old daughter. A detective questioned residents who lived adjacent to the handrail, including Melvin, who answered the door at Veanie's apartment. Because Melvin's statement was inconsistent with that of other neighbors, the detective sought a search warrant for Veanie's apartment. Veanie later consented to the search, and both she and Melvin cooperated with police. Based on the information they gave, an arrest warrant for appellant was issued and appellant turned himself in to police headquarters. Melvin and appellant's account of the night differ. Melvin recounted being at Veanie's apartment with appellant. Both Melvin and Veanie recall that appellant had an angry conversation with someone on the telephone shortly after Veanie returned home at 11:30 p.m. with her daughter, then appellant left the apartment, and returned between 2:45 and 3:00 a.m. Melvin answered the door and appellant entered screaming and yelling about being in a fight with "some guys" and Melvin saw blood on his hands. According to Melvin, appellant showered upstairs, they argued, appellant left, returned, and left again. Veanie and Melvin testified they did not clean the upstairs bathroom.

Soraya Sina, a Sexual Assault Forensic Examiner nurse (SAFE witness), testified that she examined Ms. Luzer in the Shock Trauma Unit.[1] The examination was interrupted when Ms. Luzer's blood pressure dropped and she had to be rushed to surgery. Ms. Sina later continued the examination where she determined, and later testified at trial, that Ms.

---

[1] Ms. Sina was employed at Greater Baltimore Medical Center. Due to Ms. Luzer's unstable condition however, Ms. Sina examined Ms. Luzer in the Shock Trauma Unit of the hospital.

Luzer had contusions, tears, and abrasions to her vagina; tears and swelling around her anus; and bruising, blood, and a small laceration three to four inches inside her vaginal cavity. There was some blood and tearing on her hymen, but it was intact. Ms. Sina also conducted a "pubic combing" in an effort to collect trace evidence or semen. There were no condoms at the scene and no semen was detected on any of the items tested.

Appellant testified in his own defense at the trial. He admitted to being in Ms. Luzer's apartment on the night of the attack. Appellant testified that he was at Veanie's apartment with Melvin and, after Veanie fell asleep with her daughter, Melvin asked him to come with him to what turned out to be the victim's apartment. Appellant said that he followed Melvin into Ms. Luzer's apartment and waited in the living room while Melvin went back into Ms. Luzer's bedroom. Appellant then heard muffled noises and screams and when he entered the bedroom, he saw Melvin on top of Ms. Luzer's naked body. Melvin stabbed Ms. Luzer, appellant wrestled with him for the knife, and then Melvin left the apartment by jumping out of the window. Appellant testified that he went to the kitchen to call 911 but decided not to call because he was covered in blood. Appellant heard someone at the door and because he thought it might be the police he left through the same window as Melvin. Appellant went back to Veanie's apartment where Melvin was showering upstairs, they argued, Melvin gave appellant clothes to change into, and he left.

DNA evidence from Ms. Luzer's apartment confirmed appellant's presence during the attack. No fingerprints were determined conclusively to belong to Melvin, although appellant testified that Melvin wore gloves. Multiple blood samples recovered from the

4

upstairs bedroom of Veanie's apartment tested positive for Ms. Luzer's DNA. An empty can of Ajax cleaner was found in the upstairs bathroom by forensic examiners and they noticed a strong odor of cleaning solution as well.

The State advanced a theory of the case with rape as the motive for the attack and the attempted murder an effort to get rid of the witness. At trial the defense did not challenge the occurrence of a sexual assault but focused its defense on the theory that Melvin committed the crimes, not appellant.

The jury convicted appellant and appellant filed a direct appeal, which this Court affirmed in an unreported opinion filed on June 7, 2004. *Fullwood v. State,* September Term 2002, No. 2197 (filed June 7, 2004). Approximately ten years later, appellant filed a Petition for Post Conviction Relief. Appellant retained a SAFE expert with experience conducting, reviewing, and interpreting the results of SAFE examinations. After reviewing the State's SAFE witness's examination and testimony, the expert made several findings that questioned the credibility of the evidence. The expert was critical of the manner in which the examination had been done, questioned whether the photographs taken by Ms. Sina showed the injuries that Ms. Sina testified that she had observed, offered alternative explanations for why some of the indications of injury may have been present, and questioned the interpretations drawn by Ms. Sina. Specfically, appellant's SAFE expert testified at the post-conviction hearing that Ms. Sina failed to photograph certain injuries and failed to include other injuries in her written report that she later testified to at trial. Additionally, appellant's expert testified that it was possible one of the injuries may have

5

been caused by the insertion of the catheter at shock trauma, the Teledyne blue dye used during the examination may have been misapplied to certain areas that could lead to a false positive reading, and the positioning of the posterior fourchette was misidentified as being located at the five, six, and seven o'clock positions although the posterior fourchette is only at the six o'clock position. Appellant's SAFE expert acknowledged that she was unable to conclude definitively that the injuries described and documented by Ms. Sina had not occurred and certain conclusions were limited because she could only review photographs and could not conduct a live examination of the victim.

At the post-conviction hearing, appellant's counsel called as a witness Kenneth Ravenell, appellant's trial counsel. He testified that he did not conduct any pre-trial investigation into the sufficiency of the State's sex crime evidence. He acknowledged that Ms. Sina provided much of the State's evidence as to the sexual assault and "the bulk of the State's evidence and the rape case" depended on the credibility of the SAFE nurse. Trial counsel admitted if he had had similar testimony as the SAFE expert retained for the post-conviction hearing he "absolutely" would have presented it to the jury and there was "no strategic reason" not to. Trial counsel explained how the evidence could be used to attack the credibility of the State's case by undermining the theory that rape was the motive for the attack. Trial counsel testified as to his belief that undermining the State on one issue can diminish its credibility on other issues.

On September 3, 2015, Judge Jakubowski denied the request for Post Conviction relief and held that appellant failed to overcome the presumption that trial counsel's failure

6

to investigate and challenge the state's rape evidence was trial strategy. Judge Jakubowski provided a reasoned explanation for her ruling denying relief as to each of appellant's allegations of error including: 1) ineffective assistance of counsel for trial counsel's failure to challenge the rape evidence asserted by State witness, Soraya Sina; failure to investigate and cross-examine witness, Melvin Fullwood; failure to object to the introduction of the prejudicial mug shot into evidence; failure to test and present exculpatory DNA evidence at trial; failure to pursue and investigate Melvin Fullwood's confession; 2) trial counsel's conflict of interest stemming from his involvement with Melvin Fullwood in another case; and 3) cumulative ineffective assistance of counsel. Judge Jakubowski stated:

> "Petitioner has failed to overcome the presumption that trial counsel's actions were mere trial strategy, as required by the deficiency prong of the *Strickland* test. Petitioner presented insufficient evidence to indicate that the evidence and background of SAFE nurse, Sina, required further investigation. The Petitioner offers an inadequate basis as to how an expert witness called to refute Nurse Soraya would have been an effective trial strategy. Additionally, counsel testified at the Post Conviction hearing that the case centered around *who* had committed the crime. It should be noted that trial counsel was successful in establishing that Nurse Sina was a fact witness and not an expert witness. Challenging a prosecution witness and deciding not to call a witness are actions that are considered tactical in nature. Tactical defense decisions are within counsel's purview.

> ***

> It should also be noted that the Petitioner testified at trial that Melvin Fullwood committed the assault and he saw him on top of the victim who was naked at the time. There is no dispute that the victim was brutally attacked and nearly died. Petitioner's claims that if expert testimony was available at trial to refute the rape charge that it would have removed motive and changed the outcome of the trial. This Court finds

7

no merit or basis to this allegation after considering the testimony at the hearing, the trial transcript and the applicable law."

This timely appeal followed.

## II.

Before this Court, appellant argues that trial counsel rendered ineffective assistance in failing to investigate and call an expert witness to controvert the evidence of a sexual assault. Appellant argues that the court erred in denying post-conviction relief because trial counsel admitted there was no strategic reason for failing to investigate and challenge the rape evidence and *Strickland* requires trial counsel be reasonably informed, through investigation, before making a strategic decision. *See Strickland v. Washington,* 466 U.S. 668, 690-91 (1984). Appellant argues that trial counsel's focus on who committed the crimes, rather than whether the crimes actually occurred, did not justify the exclusion of a defense that could undermine the credibility of the sex crime evidence. By arguing that the defenses are not mutually exclusive, appellant asserts that counsel's decision not to consult with an expert before settling on a defense strategy was unreasonable and cannot be excused as a strategic decision. Finally, appellant argues there is a reasonable probability that the outcome of the proceeding would have been different if findings similar to those presented by the expert at the post-conviction hearing had been presented to the jury. Appellant argues this evidence would have created reasonable doubt as to whether a sexual assault occurred and would have undermined the State's theory of the case.

Appellant also argues that the rape accusations had a prejudicial spillover effect on the attempted murder charge by tainting the jury's perception of appellant and making the jury more likely to convict on all counts.

Appellee argues that trial counsel's failure to investigate and challenge the rape evidence was an objectively reasonable trial strategy based on the defense's focus, not on the extent of what was done to the victim, but rather who committed the crimes against her. Appellee argues that defense counsel's strategy was reasonably aimed at presenting a credible narrative that implicated Melvin and since there was no question that a serious crime had occurred, the question of whether the victim had, as a matter of fact, been sexually assaulted was entirely peripheral. Appellee argues that the decision not to allocate resources to hire an expert was a reasonable decision because it would not effectively refute Ms. Sina's findings inasmuch as they were based mostly on her own recollections and observations and the exam was conducted under less than ideal circumstances because of the victim's critical medical condition. Appellee further argues that a defense expert would provide only inconclusive evidence and incremental impeachment value and therefore may not have been presented to the jury even if one was retained. Appellee argues that challenging the sexual assault evidence would have distracted the jury and may have backfired if interpreted by the jury as an attempt to sully the victim and diminish the horror that she experienced. The State argues that strategy is evidenced at trial since defense counsel was careful not to dispute the sexual assault in front of the jury but argued vigorously before the judge in motions for judgment of acquittal that the evidence,

9

including perceived deficiencies in Ms. Sina's testimony, was not sufficient to support the sexual offenses.

III.

The right to effective assistance of counsel in a criminal trial is guaranteed by the Sixth Amendment to the United States Constitution, made applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Strickland,* 466 U.S. at 669. It is black letter law in Maryland that a "post-conviction proceeding pursuant to the Maryland Uniform Post Conviction Procedure Act, Maryland Code § 7-102 of the Criminal Procedure Article (2001), is the most appropriate way to raise the claim of ineffective assistance of counsel." *Mosely v. State,* 378 Md. 548, 558-59, 836 A.2d 678, 684 (2003).

*Strickland* sets forth the legal standard for determining whether there was ineffective assistance of counsel with a two-pronged test including a "performance component" and a "prejudice component." *Barber v. State,* 231 Md. App. 490, 515, 153 A.3d 800, 813 (2017); *State v. Jones,* 138 Md. App. 178, 205, 771 A.2d 407, 423 (2001). A defendant must demonstrate that "under the circumstances, counsel's acts resulted from unreasonable professional judgment, meaning that 'counsel's representation fell below an objective standard of reasonableness . . . .'" *Jones*, 138 Md. App. at 206, 771 A.2d at 424 (internal citation omitted). "To establish the requisite degree of prejudice in Maryland, the defendant must demonstrate a 'substantial possibility that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 207-08, 771 A.2d at 424 (internal citation omitted). Both prongs must be met to show "counsel's conduct so

10

undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686.

The standard of review of the lower court's determinations regarding issues of effective assistance of counsel "is a mixed question of law and fact." *Strickland,* 466 U.S. at 698. A reviewing court "will not disturb the factual findings of the post-conviction court unless they are clearly erroneous." *Jones,* 138 Md. App. at 209, 771 A.2d at 425. Nonetheless, "a reviewing court must make an independent analysis to determine the 'ultimate mixed question of law and fact . . . [i]n other words, the appellate court must exercise its own independent judgment as to the reasonableness of counsel's conduct and the prejudice, if any.'" *Id.*, 771 A.2d at 425 (internal citations omitted).

First, we examine whether trial counsel's decision not to investigate and call an expert witness to testify regarding the evidence of the sexual assault fell below an objective standard of reasonableness. This inquiry under the performance prong of the *Strickland* standard is highly deferential and a defendant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland,* 466 U.S. at 689 (internal citation omitted).

Appellant argues that trial counsel's decision not to pursue a line of defense challenging the sexual assault evidence cannot be considered a reasonable trial strategy because counsel testified at the post-conviction hearing that he had no strategic reason for his failure to investigate the sufficiency of this evidence. While testimony at post-conviction hearings can help explain tactical decisions, "a fair assessment of attorney

11

performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland,* 466 U.S. at 689. For this reason, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 690.

Trial counsel testified he could think of no strategic reason not to use expert testimony indicating the State's evidence presented by the SAFE nurse was not enough to conclude that a sexual assault had taken place, *if he had obtained it.* Trial counsel's testimony was not an explanation of tactical choices but a retrospective opinion on something he may have done in different circumstances, namely, if he had retained an expert. This speculation is susceptible to the same hindsight bias that courts caution against, particularly when accompanied with the present knowledge that the chosen strategy did not prevail. Most significantly, the performance inquiry therefore requires an *objective* evaluation of the reasonableness of counsel's conduct from "counsel's perspective at the time." *See id.* at 689.

Under this objective standard, appellant has failed to offer sufficient explanation as to why the chosen strategy, which focused on who committed the crime, rather than the particulars of the crime itself, was unreasonable. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigations." *Strickland,* 466 U.S. at 690-91. Appellant argues that pursuing both lines of defense would not be inconsistent. While

pursuing multiple lines of defense may be an available strategic choice, the decision to pursue one strategy over the other may also be a reasonable strategic choice. "[W]hen you add a weak argument to a strong argument, you weaken, not strengthen. The sum in such a case is worth less than the best of its parts. . . . Your advocacy is never stronger than your weakest argument." HERBERT J. STERN & STEPHEN A. SALTZBURG, TRYING CASES TO WIN IN ONE VOLUME 40 (2013). An argument challenging the sexual assault may have been reasonably viewed as a weak argument and thus the strategic choice to focus squarely on a stronger argument challenging who committed the crimes was a reasonable trial strategy.

A review of the record and the circumstantial evidence of a sexual assault supports the presumption that it was reasonable to reserve argument challenging the sufficiency of the sexual assault evidence for motions for judgment of acquittal before the judge in order to present a more consistent and credible defense theory to the jury. This is especially reasonable due to the sensitivity of challenging the sexual assault when the victim clearly suffered extensive injuries, was found naked, and the defense's theory of the case placed Melvin sitting on top of her nude body. Further, and highly significant in our view, appellant testified at trial that he heard moaning prior to entering Ms. Luzer's bedroom and therefore attacking the sexual assault evidence may have been considered inconsistent with appellant's testimony. Thus, appellant has failed to overcome the presumption that trial counsel's actions can be considered sound trial strategy.

Even if trial counsel's performance can be said to be deficient, appellant fails to meet his burden under the second prong of the *Strickland* test requiring prejudice be shown. Although the appellant need not show that the prejudice "more likely than not altered the outcome in the case," there must be a "substantial possibility" that but for the prejudice, the result of the proceeding would have been different. *Jones,* 138 Md. App. at 207-08, 771 A.2d at 424-25 (internal citations omitted). Given that the expert's testimony at the post-conviction hearing was inconclusive and admittedly based on an imperfect report due to the medical exigencies during the forensic exam, it is unlikely such testimony would have had a substantial effect on a jury. It is even more unlikely because of the circumstantial evidence pointing to a sexual assault and, additionally, the other undisputed life-threatening injuries suffered by the victim. Based on these facts and the evidence presented at trial, we cannot conclude that there was a substantial possibility that, but for trial counsel's failure to investigate and challenge the State's sexual assault evidence, the result of the proceeding would have been different. We hold that appellant was not denied effective assistance of counsel.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

14